55 P.3d 304

**John B. CAMP, Plaintiff–Appellant–Cross Respondent,**

v.

**EAST FORK DITCH COMPANY, LIMITED, Defendant–Respondent–Cross Appellant.**

**No. 26139.**

Supreme Court of Idaho,
Boise, February 2002 Term.

Sept. 11, 2002.

Churchill Law Offices, Boise, for appellant. Gary L. Neal, Boise, argued.

Ringert Clark, Chartered, Boise, for respondent. Charles L. Honsinger, Boise, argued.

EISMANN, Justice.

The appellant John B. Camp appeals from the district court's finding that the respondent East Fork Ditch Company has an easement across his property for an irrigation ditch and from an order punishing him for contempt for violating the judgment prohibiting him from interfering with that easement. We uphold the judgment regarding the easement; vacate the order finding Camp in contempt; and remand for further proceedings. The Ditch Company also cross-appeals the order denying its request for an award of attorney fees. We vacate that order and remand for reconsideration of the request.

## I. FACTS AND PROCEDURAL HISTORY

This lawsuit centers upon the right to use an irrigation ditch called the East Fork Ditch near Council, Idaho. At times during the 1996 and 1997 irrigation seasons, the appellant John B. Camp diverted all of the water out of that section of the ditch that crosses his property. In 1997, Camp was issued two misdemeanor citations for injury to a ditch in violation of Idaho Code § 18-4306. Anneliese Turner, the president of East Fork Ditch Company, Limited, (Ditch Company) had signed the citations. Camp contended that the Ditch Company had no interest in the ditch downstream from his headgate, and the criminal charges were ultimately dismissed on the condition that Camp institute litigation to determine the ownership of that section of the ditch.

On August 18, 1998, Camp filed this action. On November 18, 1998, before any party answered, he filed an amended complaint in which he named as defendants the Ditch Company; the Ditch Company's directors Anneliese Turner, Janet Meyer, William Abide, Daniel Krupp, and Kenneth Ward; and Janet and Ronald Meyer and Lilly Johnson, three water users who obtained irrigation water downstream from Camp's property. The three water users and the Ditch Company filed answers and counterclaims seeking to enjoin Camp from interfering with the ditch. The board of directors also joined in the Ditch Company's answer denying the claims alleged in the complaint.

On March 12, 1999, the Ditch Company and the members of its board of directors moved to dismiss this action on the ground that the complaint did not state a claim upon which relief could be granted. On the same date, the Meyers and Johnson also filed an identical motion to dismiss. On March 30, 1999, Camp filed a motion seeking leave to file a second amended complaint.

The district court heard these motions on April 28, 1999. The court first heard Camp's motion to file a second amended complaint and orally granted it. The parties then stipulated that Camp's causes of action against the Ditch Company's directors and the individual water users would be dismissed without prejudice. Finally, the district court granted the Ditch Company's motion to dismiss counts two and three of the amended complaint.

On June 1, 1999, Camp filed his second amended complaint, naming as defendants the Ditch Company, Anneliese Turner, and Gerald Meyer in his capacity as water master. In count one, Camp sought a declaratory judgment enjoining the Ditch Company from exercising jurisdiction over the irrigation lateral. In count two, Camp sought damages against the Ditch Company because its president Anneliese Turner had initiated criminal charges against him for interference

with the ditch. In count three, Camp sought damages against Turner for malicious prosecution based upon her conduct in initiating the criminal charges against Camp. In count four, Camp sought the appointment of a water master. In count five, Camp sought an injunction requiring the Ditch Company to prohibit persons who were not shareholders from receiving water from the ditch.

On June 18, 1999, the Ditch Company moved to strike Camp's second amended complaint. The parties argued that motion on August 23, 1999, and the district court granted it in part, striking language from counts one and five and striking count two in its entirety. On September 14, 1999, the parties stipulated to dismiss Gerald Meyer, the water master, from this action.

On September 16, 1999, counts one, four, and five of Camp's second amended complaint and the counterclaims filed by the Ditch Company and the three water users were tried to the district court sitting without a jury. At the conclusion of Camp's presentation of evidence, the Ditch Company moved for an involuntary dismissal under Rule 41(b) of the Idaho Rules of Civil Procedure. The district court granted the motion for involuntary dismissal, and the parties then stipulated that judgment be entered against Camp on the counterclaims. Pursuant to that stipulation, on October 12, 1999, the district court entered an order permanently enjoining Camp from interfering with the East Fork Ditch or the lateral ditches taking water from the East Fork Ditch. The order also provided that the injunction resolved the counterclaim filed by the Meyers and Johnson, and it dismissed that counterclaim.

Count three of Camp's second amended complaint, which alleged a claim for malicious prosecution against Turner, was scheduled for a jury trial to commence on November 16, 1999. On October 18, 1999, Turner moved for summary judgment seeking to have that count dismissed. The district court heard and orally granted that motion on November 16, 1999. On November 24, 1999, it entered an order granting the motion for summary judgment.

On December 8, 1999, the Ditch Company, the Meyers, and Johnson filed a motion for an award of attorney fees under Idaho Code §§ 12–120(1), 12–121, and 12–123 and a memorandum of costs seeking an award of mandatory costs totaling $242.21, discretionary costs totaling $1,070.38, and attorney fees totaling $39,874.00. On December 21, 1999, Camp filed a motion to disallow costs. The motion pointed out that the memorandum of costs did not include the statement required by Rule 54(d)(5) that, to the best of the party's knowledge and belief, the items claimed as costs were correct and were in compliance with Rule 54(d). On December 22, 1999, the Ditch Company filed an amended memorandum of costs correcting that deficiency.

On January 5, 2000, Camp filed a notice of appeal. On February 29, 2000, the district court heard the motion to disallow costs. Both parties were then given time to submit additional authority. In an order entered on May 18, 2000, the district court denied all costs claimed. It held that the memorandum of costs filed on December 8, 1999, did not include the statement required by Rule 54(d)(5) and that the amended memorandum of costs filed on December 22, 1999, was untimely. On June 1, 2000, the Ditch Company appealed the order denying costs.

On June 29, 2000, the Ditch Company instituted contempt proceedings against Camp based upon his violation of the permanent injunction entered on October 12, 1999. The district court heard that matter on August 3, 2000. Four days later it issued an order finding that Camp was in contempt of court and ordering that he immediately serve five days in jail and pay a fine of $5,000 within thirty days. On September 18, 2000, Camp filed an amended notice of appeal from the order finding him in contempt. On March 29, 2001, the district court awarded the Ditch Company attorney fees in the sum of $3,757.75 in connection with the contempt proceedings.

After oral argument, this Court determined that the order granting summary judgment as to count three of Camp's second amended complaint was not a final judgment, and on May 3, 2002, it remanded this case to

the district court for entry of a final judgment on that count. On May 23, 2002, the district court entered a final judgment dismissing count three of the second amended complaint.

## II. ANALYSIS

### A. Did the district court err in dismissing count one of Camp's second amended complaint?

■ In count one of his second amended complaint, Camp sought a declaratory judgment holding that the Ditch Company had no jurisdiction over that portion of the ditch that crossed his property. That count was tried to the district court sitting without a jury. A trial court's findings of fact will not be set aside on appeal unless they are clearly erroneous. *Bramwell v. South Rigby Canal Co.,* 136 Idaho 648, 39 P.3d 588 (2001); IDAHO R. CIV. P. 52(a). When deciding whether findings of fact are clearly erroneous, this Court does not substitute its view of the facts for that of the trial court. *Bramwell v. South Rigby Canal. Co.,* 136 Idaho 648, 39 P.3d 588 (2001). It is the province of the trial court to weigh conflicting evidence and to judge the credibility of witnesses. *Rowley v. Fuhrman,* 133 Idaho 105, 982 P.2d 940 (1999). On appeal, this Court examines the record to see if challenged findings of fact are supported by substantial and competent evidence. *Id.* Evidence is regarded as substantial if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact has been proven. *Bramwell v. South Rigby Canal Co.,* 136 Idaho 648, 39 P.3d 588 (2001).

■ The East Fork Ditch enters Camp's property at its northeast corner, where Camp's headgate is located. From Camp's headgate, designated Headgate 15, the ditch meanders in a southerly direction across Camp's property to Leek's Pond, which is located on the southern boundary of Camp's property. In order to deliver irrigation water to the Meyers and to Lilly Johnson, the Ditch Company conveys water through the ditch to Leek's Pond, from which the Meyers and Johnson withdraw their water. In this litigation, Camp contended that the East Fork Ditch ended at Headgate 15. In count one of his second amended complaint, Camp sought a declaratory judgment holding that the Ditch Company had no jurisdiction over that section of the ditch that is downstream from Headgate 15. The district court held that the Ditch Company easement included the disputed section of the ditch, and it therefore dismissed count one of his second amended complaint.

■ Camp raises three arguments regarding the district court's dismissal of count one. First, he challenges the district court's finding that the Ditch Company was the owner of the ditch. The district court held that the Ditch Company had acquired an easement by prescription to maintain the irrigation ditch across Camp's property, based upon more than twenty-one years [1] of open, notorious, continuous, and uninterrupted use under a claim of right and with the knowledge of the owner of the servient tenement. In its findings of fact and conclusions of law stated orally on the record, the district court said, "I find that the East Fork Ditch Company owns the East Fork Ditch downstream from Headgate 15 to Leeks Pond." In its judgment, the district court wrote, "The ditch running from box 15 south to Leeks Pond is the East Fork Ditch, and is owned by the East Fork Ditch Company." Camp argues, "The theory of right-of-way cited by the Dis-

---

1. To establish an easement by prescription, the claimant need only prove a five-year period of open, notorious, continuous, and uninterrupted use, under a claim of right and with the knowledge of the owner of the servient tenement. *Drew v. Sorensen,* 133 Idaho 534, 989 P.2d 276 (1999). In this case, the Ditch Company's president Anneliese Turner testified that the Ditch Company had used the disputed section of the ditch for the twenty-one years she had lived there. Camp also testified that in the 1950's and 1960's, he performed labor on the disputed section of the ditch in order to pay assessments his parents owed to the Ditch Company. A reasonable inference from Camp's testimony is that in the 1950's and 1960's, both Camp's parents, who at that time owned the property, and the Ditch Company believed that the Ditch Company had an easement for the disputed section of the ditch. Camp's labor in maintaining that section of the ditch would provide a benefit to the Ditch Company only if that section of the ditch was included in the Ditch Company's easement.

trict Court in its conclusions of law does not establish ownership of the portion of the ditch in dispute. . . . To find that the doctrine of prescriptive easement conveys an ownership interest in the servient estate would be an extension of the doctrine antithetical to its nature."

■ It is clear from the record that when the district court stated that the Ditch Company "owns" the disputed section of the ditch, it did not mean that the Ditch Company holds legal title to the real property upon which the ditch is located. Although the person who has an easement for a ditch across the land of another does not thereby gain legal title to any portion of that land, *Reynolds Irrig. Dist. v. Sproat,* 69 Idaho 315, 206 P.2d 774 (1948), the owner of such an easement is often called the "owner" of the ditch. *See Nampa & Meridian Irrig. Dist. v. Washington Fed. Savings,* 135 Idaho 518, 524, 20 P.3d 702, 708 (2001) ("The statute provides notice to owners of land that the owner of the ditch or canal has the right-of-way, and serves to clarify what the right-of-way includes."); *Rehwalt v. American Falls Reservoir Dist. # 2,* 97 Idaho 634, 635, 550 P.2d 137, 138 (1976) ("*City of Bellevue v. Daly,* 14 Idaho 545, 94 P. 1036 (1908), was a case in which the city, owner of a ditch used to divert water for domestic uses by the inhabitants, sought to enjoin Daly, owner of the land subject to the easement, from allowing his cattle to range near the ditch."). In this case, the Ditch Company did not contend that it had acquired legal title to the real property on which its ditch is located. It contended that it has an easement for the ditch. The district court did not err in stating that the Ditch Company "owns" the disputed section of the ditch where the record shows that the district court simply meant that the Ditch Company has an easement across Camp's property for that section of the ditch.

■ Camp next argues that the district court erred in finding that the Ditch Company had acquired a prescriptive easement for the ditch because any use of the ditch by the Ditch Company was permissive, as it also benefited Camp's property. That section of the ditch south of Headgate 15 was used solely to convey water to Leek's Pond, from which other Ditch Company shareholders withdrew their water. Camp has not explained how that section of the ditch benefits his property. It clearly does not. The easement to cross his land with a ditch to convey water to others did not benefit Camp's land. *Sellers v. Powell,* 120 Idaho 250, 252, 815 P.2d 448, 450 (1991).

■ Finally, Camp argues that even if the Ditch Company has an easement for a ditch across his land, it does not have jurisdiction over the disputed section of the ditch. He contends that the Ditch Company's by-laws provide that it does not have jurisdiction over that portion of the ditch downstream from Headgate 15. He defines "jurisdiction" as the power or right to exercise authority over that section of the ditch. The by-law provision upon which Camp bases his argument provides as follows:

The company shall have limited obligation or jurisdiction beyond the headgate where the shareholders water is measured. Complaints about abuses of water distribution of shareholders along the lateral ditches will comply as follows.

a. A written letter about the complaint must be delivered to the board of directors.

b. Within 5 days of receipt of the letter of complaint, the directors shall contact the plaintiff in person and as soon as possible meet with both parties at the point of dispute.

c. Within that 5 day period, the board of directors will write to both parties informing them of their recommendation in the dispute. As a guide line this letter should include the number of shares each party has, and how the dispute might be settled fairly by both parties. (1) It could be installing a headgate on the lateral ditch, paid by the parties involved, or (2) as an example; party "A." has 5 shares, party "B." has 10 shares of East Fork Ditch. The Board of Directors could recommend party "A" use both party "A. & B's" water for 5 days, then party "B" could use party "A. & B.'s" water for 10 days.

Camp relies upon the first sentence in the above-quoted provision and argues that the phrase "*beyond the headgate*" means downstream from the headgate. Because Headgate 15 is the last headgate on the ditch, he contends that the Ditch Company has no jurisdiction over that section of the ditch downstream from Headgate 15. According to Camp, even if the Ditch Company has an easement to maintain the section of ditch that crosses his land, it has no jurisdiction— no power or right to exercise authority—over that section of the ditch. That lack of jurisdiction means that the Ditch Company cannot prevent a shareholder, such as Camp, from diverting all of the water from that section of the ditch. Camp's interpretation of the by-laws is clearly erroneous.

The Ditch Company was incorporated on July 21, 1906. The purposes for which it was formed include, "To, own hold and acquire, the *EAST FORK DITCH,* and to manage the same for the purpose of supplying the stockholders of this Corporation, and their successors, and assigns, *with water for irrigation, and domestic use.*" (Emphasis in original.) For decades, the Ditch Company has been using the ditch downstream from where Headgate 15 is located to deliver water to the Ditch Company's shareholders. That headgate was installed in 1986 or 1987 at Camp's request, after he and his brother inherited the property from their parents in 1984. The Ditch Company adopted its current by-laws on May 25, 1995. It is clear that by adopting the by-laws, it did not intend to give up jurisdiction over any portion of the ditch. To do so would, in essence, cut off shareholders because the Ditch Company would no longer be able to deliver water to them.

There are twelve other headgates upstream from Camp's headgate. If "beyond the headgate" meant downstream from a headgate, then the Ditch Company would have no jurisdiction over that section of the ditch downstream from the first headgate. It would be unable to deliver water to those shareholders, including Camp, who obtain their water from the twelve headgates that are downstream from the first one. Even if, as Camp contends, "beyond the headgate" should be read to apply only to the last headgate [2] on the ditch, which is Camp's headgate, there is no reason why the Ditch Company would desire to cut off those shareholders who obtain their water from Leek's Pond which is downstream from Camp's headgate. The by-laws also provide, "Each stockholder is entitled to a perpetual right to use water from said irrigation system ... upon the land described in his stock certificate during the irrigation season of each year." Camp's argument that the Ditch Company relinquished jurisdiction over sections of the ditch is inconsistent with the purposes for which the Ditch Company was formed and with the provision that the shareholders have a perpetual right to use water from the irrigation system.

The by-laws provision stating "The company shall have limited obligation or jurisdiction beyond the headgate where the shareholders water is measured" pertains to jurisdiction over water after it is diverted from the East Fork Ditch at a headgate. If, for example, a headgate diverts water from the ditch into a lateral that is used to convey water to two shareholders, the Ditch Company has no obligation or jurisdiction to resolve disputes between those shareholders regarding their use of the water from their lateral. If one of them requests five shares of water and the other ten shares at the same time, the Ditch Company is obligated to deliver, assuming it is available, fifteen shares of water to the headgate for diversion into the shareholders' lateral. If one of the shareholders then takes more than his rightful share of the water from the lateral, the Ditch Company has no obligation or jurisdiction to resolve the dispute or to make the shareholder take only his proper share of the water. The Ditch Company has jurisdiction over its ditch, and the headgates in its ditch, but it has no jurisdiction or obligation over the shareholders' laterals or other waterworks into which the Ditch Company diverts water from its ditch. The Ditch Company can measure water being diverted

at the headgates, but it is not required to measure water at other places, including in laterals conveying water that is diverted at a headgate. Once water is diverted from the ditch at a headgate—once it is beyond the headgate—the Ditch Company no longer has jurisdiction over or any obligation regarding that water.

Camp's headgate diverts water for his use from the ditch, through a pipe that is perpendicular to the ditch, and then into a lateral on Camp's property. Water flowing to Leek's Pond passes through Camp's headgate and remains in the ditch until it empties into the pond. The ditch from Camp's headgate to the pond is clearly a continuation of the East Fork Ditch. The district court did not err in dismissing count one of Camp's second amended complaint.

**B. Did the district court abuse its discretion in hearing Turner's motion for summary judgment that was filed twenty-nine days before trial?**

█ In count three of his second amended complaint, Camp alleged a claim for malicious prosecution against Turner based upon her conduct in initiating the criminal charges against Camp for the crime of injury to a ditch. The district court set the trial on the malicious prosecution claim to commence on Tuesday, November 16, 1999. On October 18, 1999, twenty-nine days before the trial, Turner filed and served her motion for summary judgment seeking a dismissal of that claim. Rule 56(b) of the Idaho Rules of Civil Procedure provides, "[A] motion for summary judgment must be filed at least 60 days before the trial date ... unless otherwise ordered by the court." The scheduling order entered by the district court on May 18, 1999, stated, "The last day for filing motions for summary judgment shall be not later than seventy-five (75) days prior to trial." On November 3, 1999, Camp filed a motion asking the district court to strike or deny the motion for summary judgment, based upon the scheduling order and Rule 56(c).

Turner complied with Rule 56(c), which requires that the motion for summary judgment, affidavits, and supporting brief be served at least twenty-eight days before the time fixed for the hearing. Turner served her brief with her motion, and she had served her supporting affidavits three months earlier on July 14, 1999, in support of her prior motion for summary judgment. In opposition to that prior motion, Camp had filed an affidavit and a brief in which he argued that there was a genuine issue of material fact regarding whether the Ditch Company had an easement downstream from Camp's headgate. Turner's first motion for summary judgment was argued on August 23, 1999, and the district court denied the motion on the ground that there were genuine issues of material fact.

Those factual issues were then tried on September 16, 1999, and on October 12, 1999, the district court entered judgment in favor of the Ditch Company. Six days after the entry of that judgment, Turner moved for summary judgment the second time, contending that there were now no disputed issues of material fact and that she was entitled to a judgment dismissing the malicious prosecution claim against her.

The only issue on appeal is whether the district court abused its discretion in permitting Turner to file the motion twenty-nine days before trial. Camp has not presented any argument showing that it was error to grant Turner's motion for summary judgment. He simply argues that the district court erred in hearing the motion.

Rule 56(b) grants the trial court authority to alter the requirement that motions for summary judgment must be filed at least sixty days before trial. Rule 16(b)(6) provides that a scheduling order can be modified upon a showing of good cause. In this case, the district court found that there was good cause to alter the time periods provided in Rule 56(b) and the court's scheduling order. The district court based its finding upon three factors. First, Turner filed and served the motion promptly after the court entered its judgment holding that the Ditch Company had an easement across Camp's land. Second, both parties were very familiar with the issues involved in the motion for summary judgment. Third, Camp could not show any prejudice resulting from hearing the motion on its merits. The district court did not

abuse its discretion in agreeing to hear the motion for summary judgment.

## C. Did the district court err in imposing a criminal contempt sanction against Camp?

 The right to appeal to this Court as a matter of right is governed by the Idaho Appellate Rules.[3] A contempt order is appealable under the same circumstances as any other order or judgment entered in a civil or criminal action. Under Idaho Appellate Rule 11, a contempt order entered against a party in a civil case can be appealed as a matter of right if it is certified as final under Rule 54(b) of the Idaho Rules of Civil Procedure, IDAHO APP. R. 11(a)(4), or if it was made after entry of the final judgment in the case, IDAHO APP. R. 11(a)(7), if it was made before the final judgment and the party appeals from the final judgment, IDAHO APP. R. 17(e)(1)(A), or if the contempt order itself is a final judgment or order, IDAHO APP. R. 11(a)(1). If the contempt order is not appealable as a matter of right, the party found in contempt can seek a writ of review, although such a writ can only challenge the jurisdiction of the trial court to issue the contempt order. *Beeman v. Petrie*, 123 Idaho 838, 853 P.2d 583 (1993).[4]

The court entered the contempt order in this case on August 7, 2000. On September 26, 2000, the district court entered a Rule 54(b) certificate in connection with the contempt order. In addition, because the final judgment was not entered until May 23, 2002, the contempt order was appealable as an interlocutory order entered prior to entry of the final judgment. IDAHO APP. R. 17(e)(1)(A). Thus, the contempt order is appealable.

At the commencement of the contempt proceeding, the district court announced that the proceeding would be treated as a motion for civil contempt, not criminal contempt. The discussion was as follows:

THE COURT: Before we start, I do think on the record, this matter is being treated as a motion for a civil contempt.

MR. HONSINGER: As a motion for civil contempt, yes, Your Honor.

THE COURT: And I believe we discussed that this is a civil contempt issue rather than a criminal contempt issue?

MR. NEAL: Yes, Your Honor.

THE COURT: Very well. I want to make that clear on the record, then.

Camp argues that after stating that the proceeding would be treated as civil contempt, the district court erred by imposing a criminal contempt sanction of a $5,000 fine and five days in jail. We agree.

 The distinction between civil and criminal contempt is important because of the federal constitutional rights that the United States Supreme Court has held applicable in nonsummary criminal contempt proceedings. Those rights include notice that a criminal contempt sanction is being sought in the contempt proceedings, *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911); the right to a public trial, *Cooke v. United States*, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925); the right to a jury trial if the maximum penalty authorized by law, or actually imposed, exceeds six months incarceration or if the court imposed consecutive sentences totaling more than six months in length, *Codispoti v. Pennsylvania*, 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974); the right to compulsory process, *Cooke v. United States*, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925); the right to the presumption of innocence, *Gompers v. Bucks Store & Range Co.*, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911); the privilege against self-incrimination, *Id.*; the requirement that the contempt be proved

---

**3.** Idaho Code § 13–201 provides, "An appeal may be taken to the Supreme Court from a district court in any civil action by such parties from such orders and judgments, and within such times and in such manner as prescribed by Rule of the Supreme Court." Likewise, Idaho Code § 19–2801 provides, "An appeal may be taken to the Supreme Court from the district court in a criminal action by such parties from such judgments and orders of the district court, and within such times and in such manner as prescribed by Rule of the Supreme Court."

**4.** *Beeman v. Petrie*, 123 Idaho 838, 853 P.2d 583 (1993), should not be read as requiring a Rule 54(b) certificate in all instances in order to appeal a contempt order.

beyond a reasonable doubt, *Hicks v. Feiock*, 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988); the right to be represented by counsel, *In re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948); *Cooke v. United States*, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925);[5] the right to cross-examine witnesses, *In re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948); the right to call witnesses to testify both in complete exculpation or in extenuation of the offense and in mitigation of the penalty to be imposed, *Cooke v. United States*, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925); the right to testify in one's own behalf, *In re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948); the right to the protection of the exclusionary rule, *Dyke v. Taylor Implement Mfg. Co., Inc.*, 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968); the protection of the Double Jeopardy Clause, *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993); and the right to speak on one's own behalf, similar to the right to allocution, in order to present matters in mitigation or otherwise attempt to make amends with the court, *Taylor v. Hayes*, 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974). As stated by the United States Supreme Court in *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 826, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994):

> "Criminal contempt is a crime in the ordinary sense," *Bloom v. Illinois*, 391

U.S. 194, 201, 88 S.Ct. 1477, 1481, 20 L.Ed.2d 522 (1968), and "criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings," *Hicks v. Feiock*, 485 U.S. 624, 632, 108 S.Ct. 1423, 1429–1430, 99 L.Ed.2d 721 (1988).

In the words of Mr. Justice Holmes, "These contempts are infractions of the law, visited with punishment as such. If such acts are not criminal, we are in error as to the most fundamental characteristic of crimes as that word has been understood in English speech." *Gompers v. United States*, 233 U.S. 604, 610, 34 S.Ct. 693, 695, 58 L.Ed. 1115, 1120 (1914). In contrast, civil contempt sanctions may be imposed upon notice and an opportunity to be heard. *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 827, 114 S.Ct. 2552, 2557, 129 L.Ed.2d 642, 651 (1994).

There is much confusion about the difference between criminal contempt and civil contempt. Idaho Code § 18–1801 makes certain kinds of contemptuous conduct a misdemeanor. Although that misdemeanor is sometimes called "criminal contempt," *see State v. Chapman*, 112 Idaho 1011, 739 P.2d 310 (1987), it is more accurately the crime of contempt. In two prior cases, *Barnett v. Reed*, 93 Idaho 319, 460 P.2d 744 (1969); *Dutton v. District Court*, 95 Idaho 720, 518 P.2d 1182 (1974),[6] this Court did not distin-

---

**5.** In *Argersinger v. Hamlin,* 407 U.S. 25, 37, 92 S.Ct. 2006, 2012, 32 L.Ed.2d 530, 538 (1972), the United States Supreme Court held, in a misdemeanor case, "[A]bsent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." In *Alabama v. Shelton,* 535 U.S. 654, 122 S.Ct. 1764, 152 L.Ed.2d 888 (2002), the Supreme Court extended *Argersinger* to include imposition of a suspended jail sentence. The federal Circuit Courts of Appeals that have addressed the issue have held that *Argersinger* applies to contempt proceedings. *United States v. Bobart Travel Agency, Inc.,* 699 F.2d 618 (2d Cir.1983) (civil contempt); *In re Di Bella,* 518 F.2d 955 (2d Cir.1975) (civil or criminal contempt); *In re Grand Jury Proceedings Harrisburg Grand Jury 79-1,* 658 F.2d 211 (3d Cir.1981) (criminal contempt); *Richmond Black Police Officers Ass'n v. City of Richmond, Virginia,* 548 F.2d 123 (4th Cir.1977) (criminal contempt); *In re Kilgo,* 484 F.2d 1215 (4th Cir.1973) (civil con-

tempt); *Ridgway v. Baker,* 720 F.2d 1409 (5th Cir.1983) (civil and criminal contempt); *United States v. Anderson,* 554 F.2d 1154 (8th Cir.1977) (civil contempt); *United States v. Sun Kung Kang,* 468 F.2d 1368 (9th Cir.1972) (civil contempt).

**6.** In *Barnett v. Reed,* 93 Idaho 319, 460 P.2d 744 (1969), a witness in a preliminary hearing refused the probate judge's oral order to produce notes the witness had used to refresh his memory prior to testifying. The probate judge summarily found him in contempt and fined him $100. The witness sought a petition for review in the district court, which was denied. He then appealed to this Court. When holding that the facts showed a contempt of court, this Court stated, "Such order was valid and thus, pursuant to I.C. § 18-1801(4), the appellant was guilty of contempt for willful disobedience of an order lawfully issued by the court." 93 Idaho at 323, 460 P.2d at 748. This Court cited Idaho Code § 18-1801, the statute defining the crime of contempt,

862

guish between the crime of contempt and criminal contempt.

■■■ Whether contempt is criminal or civil does not depend upon the nature of the lawsuit in which the contempt proceedings are brought. A civil contempt sanction can be imposed in a criminal case (e.g., imprisoning a recalcitrant witness until he testifies), and a criminal contempt sanction can be imposed in a civil case (e.g., imprisoning a child support payor for thirty days for failing to pay the support previously ordered). In addition to the confusion caused by the crime of contempt, the distinction between criminal and civil contempt is further confused by the fact that there are several definitions of those terms.

One definition focuses upon whether the rights of the court or the rights of the party are being vindicated by the contempt sanction. Under this definition:

> Criminal contempt is the commission of a disrespectful act directed at the court itself which obstructs justice. A criminal contempt proceeding is maintained solely and simply to vindicate the authority of the court or to punish otherwise for conduct offensive to the public in violation of an order of the court.

17 AM.JUR.2D *Contempt* § 8 (1990).

> Civil contempt is the disobedience of a court order directing an act for the benefit or advantage of the opposing party to the litigation. Therefore, contempt proceedings are civil in character where the primary object is to protect the rights of private litigants by enforcing compliance

with an order of the court or to compensate for losses or damages sustained by reason of noncompliance.

17 AM.JUR.2D *Contempt* § 5 (1990). Under this definition, publishing false newspaper reports intended to discredit courts or judges is criminal contempt, *McDougall v. Sheridan*, 23 Idaho 191, 128 P. 954 (1913), and the nonpayment of child support ordered by the court is civil contempt, *In re Martin*, 76 Idaho 179, 279 P.2d 873 (1955).

■■ A second definition focuses upon the judge's purpose for imposing the contempt sanction. "When sanctions are imposed to punish the contemnor for past acts, the contempt is criminal; when sanctions are imposed for compensatory or coercive reasons, the contempt is civil in nature." *In re Williams*, 120 Idaho 473, 480, 817 P.2d 139, 146 (1991). Under this definition, whether contempt is civil or criminal, and the contemnor's concomitant constitutional rights, depend upon the judge's stated reasons for imposing the contempt sanction. Thus, a fine of $250 and three days in jail was a civil contempt sanction because the judge's comments indicated that he imposed the penalty in order to induce future compliance with the court's orders. *Id.* This definition of contempt was expressly rejected by the United States Supreme Court in *Hicks v. Feiock*, 485 U.S. 624, 635, 108 S.Ct. 1423, 1431, 99 L.Ed.2d 721, 735–36 (1988), wherein the Supreme Court stated:

> [T]he Court has eschewed any alternative formulation that would make the classifi-

---

even though the witness was never charged with that crime.

In *Dutton v. District Court*, 95 Idaho 720, 518 P.2d 1182 (1974), a witness refused to testify at a preliminary hearing after the district court had granted him immunity and ordered him to testify. The district court issued an order to show cause directing the witness to appear and show cause why he should not be held in contempt for refusing to testify at the preliminary hearing. At the conclusion of the show cause hearing, the district court found the witness in contempt and sentenced him to a fine of $300 and six months in jail. The witness then sought a petition for a writ of review in this Court. In upholding the sentence, this Court stated:

> In this case, the district court was imposing sentence for the willful disobedience of one its

orders. Such disobedience is criminal contempt. "Where the primary purpose is to preserve the court's authority and to punish for disobedience of its orders, the contempt is criminal." 17 Am.Jur.2d Contempt § 4. Criminal contempt is a misdemeanor in Idaho, I.C. § 18–1801. Therefore, the five day limit on jail terms imposed by I.C. § 7–610 is not applicable.

95 Idaho at 723, 518 P.2d at 1185. In upholding the sentence, this Court relied upon the maximum punishment for the misdemeanor crime of contempt even though the witness had never been charged with that crime. This Court later recognized that Idaho Code § 7–610 specifies the maximum punishment for criminal contempt. *Ross v. Coleman Co., Inc.*, 114 Idaho 817, 761 P.2d 1169 (1988).

cation of the relief imposed in a State's proceedings turn simply on what their underlying purposes are perceived to be. Although the purposes that lie behind particular kinds of relief are germane to understanding their character, this Court has never undertaken to psychoanalyze the subjective intent of a State's laws and its courts, not only because that effort would be unseemly and improper, but also because it would be misguided. In contempt cases, both civil and criminal relief have aspects that can be seen as either remedial or punitive or both: when a court imposes fines and punishments on a contemnor, it is not only vindicating its legal authority to enter the initial court order, but it is also seeking to give effect to the law's purpose of modifying the contemnor's behavior to conform to the terms required in the order.

"[A] criminal contempt proceeding would be characterized by the imposition of an unconditional sentence for punishment or deterrence." *Shillitani v. United States,* 384 U.S. 364, 370 n. 5, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622, 627 (1966).

 A third definition, the one adopted by the United States Supreme Court, is based upon the character of the sanction imposed. Under this definition, an unconditional penalty is a criminal contempt sanction,[7] and a conditional penalty is a civil contempt sanction. As stated by the United States Supreme Court in *Hicks v. Feiock,* 485 U.S. 624, 633, 108 S.Ct. 1423, 1430, 99 L.Ed.2d 721, 732 (1988) (brackets in original):

The distinction between relief that is civil in nature and relief that is criminal in nature has been repeated and followed in many cases. An unconditional penalty is criminal in nature because it is "solely and exclusively punitive in character." *Penfield Co. v. SEC,* 330 U.S. 585, 593, 67 S.Ct. 918, 922, 91 L.Ed. 1117, 1124 (1947). A conditional penalty, by contrast, is civil because it is specifically designed to compel the doing of some act. "One who is fined, unless by a day certain he [does the

act ordered], has it in his power to avoid any penalty. And those who are imprisoned until they obey the order, 'carry the keys of their prison in their own pockets.'" Id., at 590, 67 S.Ct. 918, [at 921], 91 L.Ed. 1117 [at 1124], quoting *In re Nevitt,* 117 F. 448, 461 (C.A.8 1902).

This is the definition that must be used to determine what federal constitutional rights apply in a particular case. "[T]he labels affixed either to the proceeding or to the relief imposed under state law are not controlling and will not be allowed to defeat the applicable protections of federal constitutional law." *Hicks v. Feiock,* 485 U.S. 624, 631, 108 S.Ct. 1423, 1429, 99 L.Ed.2d 721, 731 (1988). This Court has not heretofore adopted the United States Supreme Court's definitions of civil and criminal contempt. Because the distinction between civil and criminal contempt is important solely because of the federal constitutional protections that apply respectively to civil or criminal contempt, we adopt the definitions used by the United States Supreme Court.

 A penalty is unconditional if the contemnor cannot avoid any sanction by complying with the court order violated. A penalty is also unconditional even if it is suspended and the contemnor is placed on probation. As the Supreme Court explained in *Hicks v. Feiock,* 485 U.S. 624, 639 n. 11, 108 S.Ct. 1423, 1433, 99 L.Ed.2d 721, 736 (1988):

That a determinate sentence is suspended and the contemnor put on probation does not make the remedy civil in nature, for a suspended sentence, without more, remains a determinate sentence, and a fixed term of probation is itself a punishment that is criminal in nature. A suspended sentence with a term of probation is not equivalent to a conditional sentence that would allow the contemnor to avoid or purge these sanctions. A determinate term of probation puts the contemnor under numerous disabilities that he cannot escape by complying with the dictates of the prior orders, such as: any conditions of

---

7. Some unconditional penalties for violating a court order are not considered criminal contempt. Examples include striking pleadings, assessing costs, excluding evidence, and entering

default judgments for failure to comply with discovery orders. *International Union, United Mine Workers of America v. Bagwell,* 512 U.S. 821, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994).

probation that the court judges to be reasonable and necessary may be imposed; the term of probation may be revoked and the original sentence (including incarceration) may be reimposed at any time for a variety of reasons without all the safeguards that are ordinarily afforded in criminal proceedings; and the contemnor's probationary status could affect other proceedings against him that may arise in the future (for example, this fact might influence the sentencing determination made in a criminal prosecution for some wholly independent offense).

Likewise, if the penalty imposed is both criminal and civil, then the penalty is criminal. *Hicks v. Feiock*, 485 U.S. 624, 638 n. 10, 108 S.Ct. 1423, 1433, 99 L.Ed.2d 721, 736 (1988).

A penalty is conditional if the contemnor can avoid any sanction, including probation, by doing the act he had been previously ordered to do. Imprisonment, or a daily fine, until the contemnor complies with the court's order is conditional, and therefore civil, because the contemnor can avoid any sanction simply by performing the act he had been previously ordered to perform.

> The character of the relief imposed is thus ascertainable by applying a·few straightforward rules. If the relief provided is a sentence of imprisonment, it is remedial if "the defendant stands committed unless and until he performs the affirmative act required by the court's order," and it is punitive if "the sentence is limited to imprisonment for a definite period." [*Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418(1911) ] at 442, 31 S.Ct. 492, [at 498], 55 L.Ed. 797, [at 806]. If the relief provided is a fine, it is remedial when it is paid to the complainant, and punitive when it is paid to the court, though a fine that would be payable to the court is also remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order.

*Hicks v. Feiock*, 485 U.S. 624, 631–32, 108 S.Ct. 1423, 1429, 99 L.Ed.2d 721, 731–32 (1988). Likewise, a determinate sentence is conditional if it includes a purge clause under which the contemnor can purge himself of the contempt, and avoid any sanction, by complying with the court's order. *Id.* at 634, 108 S.Ct. at 1430–31, 99 L.Ed.2d at 733.

The Supreme Court's definition that an unconditional penalty is a criminal contempt penalty has an exception. An unconditional fine is a civil contempt penalty under federal law if it is paid to the complainant and is compensatory (based upon the damages actually sustained by the complainant). *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994); *Hicks v. Feiock*, 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988). Under Idaho law, however, the court in a contempt proceeding does not have the authority to order the contemnor to pay damages to the complainant. *Nordick v. Sorensen*, 81 Idaho 117, 338 P.2d 766 (1959); *Levan v. Richards*, 4 Idaho 667, 43 P. 574 (1896).[8]

The application of federal constitutional protections in contempt proceedings is further complicated by the fact that the nature of the contempt as being civil or criminal is based upon the penalty imposed at the conclusion of the proceedings. Thus, whether or not a criminal contempt penalty can be imposed will depend upon the rights granted to the alleged contemnor prior to the imposition of the sanction. As stated in *Hicks v. Feiock*, 485 U.S. 624, 632, 108 S.Ct. 1423, 1429–30, 99 L.Ed.2d 721, 731–32 (1988), "These distinctions [between civil and criminal contempt] lead up to the fundamental proposition that criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings."

If the contempt involves doing what the court ordered the contemnor not to

---

8. The court can award attorney fees and costs to the prevailing party in contempt proceedings. IDAHO CODE § 7–610 (1998). Even if that award was considered a contempt sanction rather than the award of costs, it would be a civil contempt sanction because it is compensatory and paid to the complainant. *Local 28 of the Sheet Metal Workers' Int'l Ass'n v. Equal Employment Opportunity Comm'n*, 478 U.S. 421, 106 S.Ct. 3019, 92 L.Ed.2d 344 (1986).

do, then under Idaho law the court can only impose a criminal contempt sanction—a determinate fine and/or a determinate jail sentence. The contemnor cannot go back in time and not do what he did.[9] Once he has rung the bell, he cannot unring it. The court could condition imposition of the fine and/or jail sentence upon the contemnor not repeating the conduct in the future, but that would be a probationary term, and therefore criminal contempt. If the contempt involves not doing what the court ordered the contemnor to do, then either a criminal or a civil contempt sanction could be imposed. The court could impose a determinate fine and/or determinate jail sentence (a criminal penalty), or it could impose incarceration and/or a daily fine that terminates once the contemnor does what he had been ordered to do (a civil penalty), or it could impose both, which would be a criminal penalty.[10] The court could impose a criminal contempt sanction, however, only if the contemnor had been afforded the federal constitutional rights applicable to criminal contempt proceedings. *Hicks v. Feiock*, 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988). The court could impose a civil contempt sanction only if the contemnor had the present ability to comply with the order violated. *Shillitani v. United States*, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966).

Under Idaho Code § 7–610, contempt can be punished by a fine of up to $5,000 and/or by incarceration in jail for up to five days, unless the contempt is nonpayment of child support in which case the jail sentence can be up to thirty days. That statute provides a criminal contempt penalty. If the contempt consisted of the failure to perform an act that is still within the contemnor's power to perform, Idaho Code § 7–611 provides that the contemnor can be incarcerated until he performs the act he was previously ordered to perform. He could also be ordered to pay a daily fine until he performs the act. *Marks v. Vehlow*, 105 Idaho 560, 671 P.2d 473 (1983). Both the incarceration until compliance authorized by Idaho Code § 7–611 and the daily fine until compliance authorized by *Marks v. Vehlow* are civil contempt penalties. In addition, the court may award attorney fees and costs to the prevailing party in the contempt proceedings. IDAHO CODE § 7–610 (1998).

■ In this case, the district court imposed a penalty of a $5,000 fine and five days in jail. Although the district court stated it imposed the sanction to coerce Camp's future compliance with the permanent injunction, the sanction was criminal in nature. It was an unconditional penalty. Once the district court ordered Camp to pay a fine and to serve time in jail, there is nothing Camp could do to avoid any penalty for his contemptuous conduct. Indeed, in this case the district court could only impose a criminal penalty because Camp's contempt consisted of doing what he had been ordered not to do.

■ At the commencement of the proceedings, the district court announced that the matter was being treated as a civil contempt. Under the federal constitution, Camp had the right to notice that a criminal sanction was being sought. *Gompers v.*

---

9. When the contempt consists of doing what the contemnor was ordered not to do, the only civil contempt penalty that could be imposed would be a fine, in the nature of damages, payable to the complainant. Idaho law does not permit, however, awarding damages to the complainant as a sanction for contempt. *Nordick v. Sorensen*, 81 Idaho 117, 338 P.2d 766 (1959); *Levan v. Richards*, 4 Idaho 667, 43 P. 574 (1896).

10. Idaho Code §§ 7–610 and 7–611 provide cumulative, not alternative, sanctions for contempt. If the contempt consisted of doing what the contemnor had been ordered not to do, or of not doing what the contemnor had been ordered to do, the court could order a determinate jail sentence and/or a determinate fine, as permitted by Idaho Code § 7–610. If the contempt consisted of failing to do what the contemnor had been ordered to do and the contemnor still has the ability to perform that act, the court could impose the sanction of imprisonment provided by Idaho Code § 7–611, and/or of a daily fine, *Marks v. Vehlow*, 105 Idaho 560, 671 P.2d 473 (1983), until he performs the act previously ordered. In this latter circumstance, the court could also impose any of the sanctions permitted by Idaho Code § 7–610. It can both punish the failure to do what the contemnor had been ordered to do and coerce the performance of that act in the future. Regardless of the sanction imposed, the court may award the prevailing party attorney fees and costs. IDAHO CODE § 7–610 (1998).

*Buck's Stove & Range Co.*, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911), unless the record shows that he was aware that a criminal contempt was charged, *United States v. United Mine Workers of America*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947). There is nothing in the record showing that Camp was aware that a criminal contempt was charged. The order to show cause served upon Camp did not mention the possible punishment, nor was he informed of the possible punishment at the commencement of the contempt proceedings.[11] Therefore, the contempt order must be vacated and this case must be remanded for further proceedings consistent with this opinion. Because we vacate the contempt order, we also vacate the award of attorney fees in connection with the contempt proceedings.

### D. Did the district court err in denying the Ditch Company's request for attorney fees?

On November 24, 1999, the district court entered an order granting Turner's motion for summary judgment on the malicious prosecution claim. Partial judgments had previously been entered on all other claims raised by the pleadings. On December 8, 1999, the Ditch Company filed a motion seeking an award of attorney fees under Idaho Code §§ 12–120(1), 12–121, and 12–123 and a memorandum of costs seeking an award of mandatory costs totaling $242.21, discretionary costs totaling $1,070.38, and attorney fees totaling $39,874.00. On December 21, 1999, Camp filed a motion to disallow costs, in which he pointed out that the memorandum of costs did not include the statement required by Rule 54(d)(5) that, to the best of

the party's knowledge and belief, the items claimed as costs were correct and were in compliance with Rule 54(d). On December 22, 1999, the Ditch Company filed an amended memorandum of costs correcting that deficiency.

The district court held that the memorandum of costs filed on December 8, 1999, was defective because it did not include the required statement that, to the best of the party's knowledge and belief, the items claimed as costs were correct and were in compliance with Rule 54(d). The district court held that the amended memorandum of costs filed on December 22, 1999, was untimely under Rule 54(d)(5) because it was not filed within fourteen days after the entry of the final judgment. The Ditch Company argues on appeal that the order granting Turner's motion for summary judgment was not a final judgment and that the Ditch Company's amended memorandum of costs was timely under Rule 54(d)(5). We agree.

Rule 54(d)(5) of the Idaho Rules of Civil Procedure requires that a memorandum of costs be filed and served not later than fourteen days after entry of judgment. Rule 54(a) of the Idaho Rules of Civil Procedure defines "judgment" as including "a decree and any order from which an appeal lies." Under Idaho Code § 13–201, an appeal may be taken in a civil action "from such orders and judgments ... as prescribed by Rule of the Supreme Court." Idaho Appellate Rule 11 lists the types of judgments and orders from which an appeal may be taken as a matter of right. Although Rule 11 permits appeals from "[j]udgments, orders and decrees that are final," it does not provide any

---

**11.** In nonsummary contempt proceedings, as in this case, the alleged contemnor is entitled to notice of the criminal contempt sanctions (a fine or jail term) that may be imposed against him. *Ross v. Coleman Co., Inc.*, 114 Idaho 817, 761 P.2d 1169 (1988). A nonsummary contempt proceeding is one in which the alleged contemnor is given notice of the charge of contempt and an opportunity for a hearing on whether or not he is in contempt. A summary contempt proceeding is one in which the contemnor is not given notice of the charge and an opportunity for a hearing on the issue of whether or not he is in contempt. Summary contempt proceedings can be used only in instances of direct contempt, contempt

that occurs in the immediate presence of the court where the judge has personal knowledge of all facts necessary to constitute the contempt based upon the judge's own observation of the contemptuous conduct. *Cooke v. United States*, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925). Although the contemnor in a summary contempt proceeding is not given a hearing before the finding of contempt, before imposing sentence the judge must give him notice of the alleged contempt, which can be oral, and a brief opportunity to speak in order to present matters in mitigation or otherwise attempt to make amends with the judge. *Taylor v. Hayes*, 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974).

definition of what judgments, orders, or decrees are final.

Whether an instrument is an appealable order or judgment must be determined by its content and substance, and not by its title. *Idah Best, Inc. v. First Security Bank of Idaho, N.A.,* 99 Idaho 517, 584 P.2d 1242 (1978). As a general rule, a final judgment is an order or judgment that ends the lawsuit, adjudicates the subject matter of the controversy, and represents a final determination of the rights of the parties. *Davis v. Peacock,* 133 Idaho 637, 991 P.2d 362 (1999). It must be a separate document, *Hunting v. Clark County School Dist. No. 161,* 129 Idaho 634, 931 P.2d 628 (1997); IDAHO R. CIV. P. 58(a), that on its face states the relief granted or denied.

In the instant case, on June 1, 1999, Camp filed his second amended complaint naming as defendants the Ditch Company, Anneliese Turner, and Gerald Meyer in his capacity as water master. The second amended complaint alleged five separate causes of action. In addition, the counterclaims previously filed by the Ditch Company and by the Meyers and Johnson were still pending before the court. On September 1, 1999, the district court entered an order entitled "Order Granting in Part Motion to Strike." It stated that with respect to the Camp's second amended complaint, "Count Two shall be stricken in its entirety." On October 12, 1999, the district court entered a document entitled "Order on Motion for Involuntary Dismissal." It provided as follows:

Pursuant to Defendant/Counterclaimants' Motion for Involuntary Dismissal under I.R.C.P. 41(b), and the findings of fact and conclusions of law on record from the trial of this matter on September 16, 1999 at the Adams County Courthouse in Council, Idaho, THE COURT HEREBY ORDERS AS FOLLOWS:

1. The ditch running from box 15 south to Leeks Pond is the East Fork Ditch, and is owned by the East Fork Ditch Company. Therefore, Count One of Plaintiff/Counterdefendant's Second Verified Complaint alleging that the aforementioned portion of the East Fork Ditch is a lateral ditch is hereby dismissed.

2. The Board of Directors of the East Fork Ditch Company are the validly appointed watermasters for the East Fork Ditch. Therefore, Count Four of Plaintiff/Counterdefendant's Second Verified Amended Complaint requesting the appointment of a watermaster is hereby dismissed.

3. There are no unauthorized diversions out of the East Fork Ditch. Therefore, Count Five of Plaintiff/Counterdefendant/s Second Verified Amended Complaint requesting an injunction requiring the East Fork Ditch Company to prohibit unauthorized diversions is hereby dismissed.

On the same date, the district court entered a document entitled "Order Issuing Permanent Injunction," which provided as follows:

Pursuant to the parties' stipulation on the record at the trial of this matter on September 16, 1999 at the Adams County Courthouse in Council, Idaho, THE COURT HEREBY ORDERS AS FOLLOWS:

1. Plaintiff/Counterdefendant John B. Camp is hereby permanently enjoined from interfering with the East Fork Ditch or the lateral ditches taking water therefrom.

2. As the above injunction resolves the Counterclaim of Janet and Ronald Meyer and Lillie Johnson, such counterclaim is hereby dismissed.

Each of the above-mentioned instruments constituted a partial judgment. The order entered on September 1, 1999, stated that count two of the second amended complaint was "stricken in its entirety." The order entered on October 12, 1999, expressly provided: "Count One of Plaintiff/Counterdefendant's Second Verified Complaint ... is hereby dismissed;" "Count Four of Plaintiff/Counterdefendant's Second Verified Amended Complaint ... is hereby dismissed;" and "Count Five of Plaintiff/Counterdefendant/s Second Verified Amended Complaint ... is hereby dismissed." The other order entered that same day expressly granted the specific relief requested by the

Ditch Company on its counterclaim and expressly dismissed the counterclaim filed by the Meyers and Johnson.

By contrast, the "Order Granting Summary Judgment as to Malicious Prosecution Claim" entered on November 24, 1999, after reciting the motion argued and the persons who appeared, merely stated:

> THE COURT HEREBY ORDERS AS FOLLOWS:
>
> Defendant's Motion for Summary Judgment as to Malicious Prosecution Claim is hereby GRANTED.

The order simply granting summary judgment does not constitute a judgment dismissing a count in Camp's second amended complaint.[12] *Hunting v. Clark County School Dist. No. 161*, 129 Idaho 634, 931 P.2d 628 (1997).

Although the partial judgments previously entered by the district court resolved counts one, two, four, and five of the second amended complaint and the counterclaims, there was no final judgment until a judgment was entered resolving count three of the second amended complaint. That judgment was not entered until May 23, 2002. Therefore, the amended memorandum of costs filed by the Ditch Company on December 22, 1999, was timely. Although it was filed before entry of a final judgment, a memorandum of costs prematurely filed is considered timely. *Great Plains Equip., Inc. v. Northwest Pipe-line Corp.*, 136 Idaho 466, 36 P.3d 218 (2001); IDAHO R. CIV. P. 54(d)(5).

The district court denied the Ditch Company's request for attorney fees solely upon the ground that its memorandum of costs was untimely. Because that ruling was in error, we vacate the order denying the requested award of attorney fees. We express no opinion as to whether the Ditch Company is entitled to an award of attorney fees.

## E. Is the Ditch Company entitled to attorney fees on appeal?

The Ditch Company has requested an award of attorney fees on appeal pursuant to Idaho Appellate Rule 41. It has not cited any statutory or contractual provision authorizing such award. Idaho Appellate Rule 41 specifies the procedure for requesting an award of attorney fees on appeal, but it does not provide the authority for awarding attorney fees. *Robbins v. County of Blaine*, 134 Idaho 113, 996 P.2d 813 (2000). Where the Ditch Company has failed to cite any authority authorizing an award of attorney fees to it, we will not address that issue. *Davis v. Parrish*, 131 Idaho 595, 961 P.2d 1198 (1998).

## III. CONCLUSION

We uphold the judgment of the district court dismissing counts one and three of Camp's second amended complaint, and we vacate the district court's order denying the

---

12. Although not controlling, the record shows that counsel who prepared the order for the district court's signature believed that the court wanted both an order and a judgment. After stating that it would grant the motion for summary judgment, the following discussion occurred:

> THE COURT: I would ask, Mr. Honsinger, that you prepare an appropriate order and submit it to me for signature.
>
> Again, Mr. Neal, with respect to findings of fact and conclusions of law, I have placed those on the record. Rather than try and summarize everything in a nutshell and run the risk of leaving something out, if you desire a written findings of fact on this matter as well as on my ruling at the conclusion of the September 16th trial, I would entertain a motion request for the transcription of that portion of the transcript which contains my findings of fact and conclusions of law.

Is there anything else that we need to address today?

[In answer to questions from counsel, the district court stated that Mr. Neal's request for additional time was denied and that the trial was vacated.]

> MR. HONSINGER: As far as the judgment goes, Your Honor, should we be expecting or preparing one?
>
> THE COURT: I would request that you prepare a judgment with the Court's specific rulings on September 16th as well as the rulings today.
>
> MR. HONSINGER: Thank you, Your Honor.

Thus, the district court requested that Mr. Honsinger prepare both an order and a judgment. He submitted the proposed order, which the district court signed, and, during the argument on Camp's motion to disallow costs, he stated that he intended to submit the proposed judgment after the district court decided the Ditch Company's request for attorney fees.

Ditch Company an award of attorney fees for defending against the claims asserted against it by Camp. We also vacate the district court's orders imposing a penalty for contempt and awarding attorney fees in connection with the contempt proceedings. We remand this case for further proceedings consistent with this opinion. Because both parties prevailed in part, we do not award costs on appeal.

Chief Justice TROUT and Justices SCHROEDER, WALTERS, and KIDWELL concur.