931 P.2d 628

**Julia HUNTING, Plaintiff–Appellant,**

v.

**CLARK COUNTY SCHOOL DISTRICT NO. 161, Defendant–Respondent.**

No. 22336.

Supreme Court of Idaho,
Pocatello, September 1996 Term.

Jan. 30, 1997.

Rehearing Denied March 6, 1997.

John E. Rumel, Boise, for appellant.

Quane, Smith, Howard & Hull, Boise, for respondent. Donald F. Carey argued.

McDEVITT, Chief Justice.

This case involves an action brought by an annual contract teacher, Julia Hunting

(Hunting), who alleges that the Clark County School District (School District) breached Hunting's agreement with the School District. The district court dismissed Hunting's complaint based upon the district court's finding that the School District was entitled to summary judgment. The primary issue raised on appeal is whether the School District is legally bound to the terms of the agreement between Hunting and the School District. We reverse the decision of the district court.

## I.

### FACTS AND PRIOR PROCEEDINGS

On July 1, 1992, Hunting was hired as a home economics teacher by the School District. Hunting and the School District entered into a Teacher's Standard Contract (Contract). The Contract had a stated term of one year and incorporated by reference the policies of the School District.[1] The policies of the School District were set forth in a "Professional Agreement Between the Clark County Education Association and Clark County School District 161" (Professional Agreement).

Hunting taught home and consumer economics for the School District during the 1992–1993 school year. Hunting did not receive any negative feedback during her first year of teaching for the School District.

On May 11, 1993, Hunting had a discussion with Delbert McFadden (McFadden), the Superintendent of the School District. During the May 11, 1993 discussion, McFadden informed Hunting that Hunting's position was going to be cut for the next school year due to budget cuts.

On May 12, 1993, the Board of Trustees of the School District (Board) held a meeting. The main issue discussed during the meeting was how the home economics department

could be adapted into other programs so that the School District could give its teachers a raise. The Board also discussed the fact that there was a lack of enrollment in the School District's home economics program.

Hunting received the first written notice that her contract with the School District would not be renewed in a letter dated June 1, 1993. The June 1, 1993 letter, informed Hunting that she would not be rehired by the School District based upon the School District's decision to "discontinue the Home Economics program due to a lack of interest when only two students preregistered [*sic*] ... [and that] some of the other courses such as Consumer Economics could be taught by other teachers certified in business, social studies, or economics." On June 4, 1993, McFadden wrote another letter to Hunting restating the School District's basis for removing the home economics program from the School District's curriculum: there was a lack of interest in the School District's home economics program and there were budget considerations.

On June 9, 1993, the Board conducted an informal review of the Board's decision not to rehire Hunting for the 1993–1994 school year. The Board affirmed its decision not to renew Hunting's contract.

On January 26, 1994, Hunting filed a complaint in the district court of the Seventh Judicial District of the State of Idaho. Hunting's complaint alleged that the School District violated the School District's reduction in force (RIF) policy which was set forth in Appendix C of the Professional Agreement. Hunting also alleged that the School District failed to provide Hunting timely written notice that Hunting would not be rehired for the 1993–1994 school year pursuant to section 7.5 of the Professional Agreement. Hunting's complaint requested the court reinstate her position as a teacher with the School District for the 1993–1994 school year,

---

1. The Contract stated:
   The District hereby employs the Teacher for the school term commencing on or about August 24, 1992 and consisting of a period of 190 days and agrees to pay the Teacher for said services a sum of Seventeen Thousand Three Hundred Forty and no/100 Dollars ($17,-340.00) of which $1,445.00 shall be payable on the 20th of the months September 1992 to

   August 1993 inclusive.... It is understood and agreed between the parties that this contract is subject to the applicable laws of the State of Idaho, the duly adopted rules of the State Board of Education and the policies of the District which are, by reference, incorporated herein and made a part of this agreement the same as if fully set forth herein.

award back pay and front pay for the 1993–1994 school year pursuant to the School District's salary schedule, and award costs and attorney fees incurred in bringing Hunting's action.

On June 29, 1994, the School District filed a motion for summary judgment. On July 5, 1994, Hunting filed a motion for summary judgment.

On December 5, 1994, the district court entered an order granting the School District's motion for summary judgment and denying Hunting's motion for summary judgment. On June 9, 1995, the district court entered a judgment dismissing Hunting's complaint with prejudice. Hunting appealed the district court's decision granting the School District's motion for summary judgment and denying Hunting's motion for summary judgment to the Idaho Supreme Court.

## II.

### STANDARD OF REVIEW

■ When both parties file a motion for summary judgment relying upon the same facts, issues, and theories, the parties essentially stipulate that there is no genuine issue of material fact which would preclude the district court from entering summary judgment. *Brown v. Perkins,* 129 Idaho 189, 191, 923 P.2d 434, 436 (1996). On appeal from the granting of summary judgment, we review the record that was before the district court, including pleadings, depositions, admissions, and affidavits, *de novo,* in order to determine whether, after construing the facts in a light most favorable to the nonmoving party, there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Brown,* 129 Idaho at 192, 923 P.2d at 437.

## III.

### THE IDAHO SUPREME COURT HAS JURISDICTION OVER HUNTING'S APPEAL

The School District argues that Hunting's appeal should be dismissed on the basis that this Court lacks jurisdiction over Hunting's appeal. The School District contends that the district court's December 5, 1994 "Order Granting Defendant's Motion for Summary

Judgment," was a final order granting the School District summary judgment and that the district court's language on the last page of the December 5, 1994 "Order Granting Defendant's Motion for Summary Judgment," stating that "[p]laintiff's complaint is dismissed with prejudice," served as a judgment set forth on a separate document, pursuant to I.R.C.P. 58(a).

■ Idaho Appellate Rule 21 provides that the time limitation for filing a notice of appeal "shall be jurisdictional and shall cause automatic dismissal of such appeal...." *See also Syth v. Parke,* 121 Idaho 162, 164, 823 P.2d 766, 768 (1991) ("The timely filing of a notice of appeal is jurisdictional.").

Idaho Rule of Civil Procedure 58(a), which deals with the method of an entry of judgment, was rescinded by the Idaho Supreme Court on March 26, 1992, and replaced with the present I.R.C.P. 58(a), which became effective on July 1, 1992. The present I.R.C.P. 58(a) states:

> Subject to the provisions of Rule 54(b): (1) ... upon a decision by the court that a party shall recover only a sum certain or costs or that all relief shall be denied, the court shall sign the judgment and the clerk shall enter it.... *Every judgment shall be set forth on a separate document.* The placing of the clerk's filing stamp on the judgment constitutes the entry of the judgment; and the judgment is not effective before such entry....

I.R.C.P. 58(a) (emphasis added).

■ The School District has not provided this Court with a judgment set forth on a separate document, other than the district court's June 9, 1995 judgment. Hunting filed her notice of appeal on July 3, 1995, within 42 days of the entry of the June 9, 1995 judgment. Hunting's notice of appeal was timely filed. This Court has jurisdiction over Hunting's appeal.

## IV.

### THE SCHOOL DISTRICT IS LEGALLY BOUND TO THE TERMS OF THE PROFESSIONAL AGREEMENT

Hunting argues that RIF procedures set forth in the Professional Agreement are legally enforceable. We agree.

In *Gilbert v. Nampa Sch. Dist. No. 131*, 104 Idaho 137, 657 P.2d 1 (1983), this Court considered whether a cost of living provision in a negotiation agreement was enforceable. In *Gilbert* the board of trustees of the school district argued that the cost of living provision was not enforceable since the board of trustees had been statutorily forced to enter the negotiation agreement pursuant to I.C. § 33–1271. *Gilbert,* 104 Idaho at 147, 657 P.2d at 11. The *Gilbert* Court held that the cost of living provision was enforceable, noting that while the legislature specifically empowered and required the board of trustees of each School District to enter into a negotiation agreement, nothing in the statutes required the board of trustees to agree to the inclusion of a cost of living provision in the negotiation agreement and that I.C. § 33–1271 did not specify or in any way limit what may be contained in such a negotiated agreement. *Gilbert,* 104 Idaho at 147, 657 P.2d at 11. The *Gilbert* Court held that

I.C. § 33–1271 does not specify, or in any way limit, what may be contained in such an agreement. It is for the legislature, not this Court, to place limitations upon the things to which the parties may agree in a negotiations agreement. In light of the absence of any limitations in I.C. § 33–1271, we hold it was within the Board's authority to agree to the cost of living clause in the negotiations agreement.

*Id.*

In *Bear Lake Educ. Assoc. v. Board of Trustees of Bear Lake Sch. Dist. No. 33,* 116 Idaho 443, 776 P.2d 452 (1989), this Court considered whether a school district could be compelled to honor a reduction in force provision in a negotiated agreement between a school district and a local education association (the Agreement). The reduction in force provision that was at issue in *Bear Lake* stated:

**When a reduction in force becomes necessary, lay-offs will be made on a last hired first fired basis** within the certificated area where cuts are deemed necessary, except in situations where a wide disparity in competence is demonstrated and documented by the established evaluation procedures. In such situations lay-offs may

be made in such a way as to retain the best qualified personnel available teaching in the district.

*Bear Lake,* 116 Idaho at 445, 776 P.2d at 454. The Bear Lake School District argued, as does the School District in this case, that the reduction in force provision in the Agreement was in conflict with the duties and responsibilities vested in the Bear Lake School District by the laws of the State of Idaho. *Bear Lake,* 116 Idaho at 446, 776 P.2d at 455. The district court granted the Bear Lake School District's motion for summary judgment.

■ The local education association appealed the district court's decision granting the Bear Lake School District's motion for summary judgment. This Court reversed the *Bear Lake* district court's decision, stating:

We do not agree that I.C. § 33–1276 precludes the school board from entering into or honoring the Master Agreement, nor do we so interpret [the reduction in force provision] . . . as conflicting with or abrogating any of the power or responsibilities vested in the District by Idaho law, specifically, I.C. § 33–513 through § 33–515.

*Bear Lake,* 116 Idaho at 446, 776 P.2d at 455. The *Bear Lake* Court went on to note that the Bear Lake School District had retained its power to suspend, grant leaves of absence, or place employees on probation for any violations of rules, pursuant to I.C. § 33–513. *Id.* The Bear Lake School District also retained all of its rights to not renew a teacher's contract on the basis of unsatisfactory performance, pursuant to I.C. § 33–514. *Id.* We continue to follow the holding in *Bear Lake.* The School District has failed to raise any new arguments that would place in question the holding in *Bear Lake.*

The *Bear Lake* Court also considered whether the legislature had expressly prohibited a school board from agreeing to the administration of reduction in force provisions. *Bear Lake,* 116 Idaho at 446–47, 776 P.2d at 455–56. The *Bear Lake* Court stated that the reduction in force provisions deal

only with the order in which layoffs shall occur when a reduction in force becomes necessary and takes into account compe-

tence, unsatisfactory performance, and retention of the best qualified teachers....
*Bear Lake,* 116 Idaho at 447, 776 P.2d at 456. The *Bear Lake* Court noted that the Bear Lake School District exercised its discretion by agreeing in advance to the method of force reduction and that since the Professional Negotiations Act had not limited the scope of negotiability as to reduction in force provisions, a reduction in force provision was an enforceable term of the Agreement. *Id.*

The School District has not distinguished the reduction in force provision at issue in *Bear Lake* from RIF provision at issue in the present case. The School District argues that the School District's power to act is limited by state statutes and that the question is not whether the legislature *expressly prohibited* the School District from agreeing to RIF procedures, but rather, the question is whether the legislature *expressly enabled* the School District to agree to RIF procedures.

▄ In the present case, the School District was acting within its express powers. Idaho Code § 33–1271 does not limit what a school district can negotiate. Idaho Code § 33–1271 expressly gives the board of trustees of a school district the authority to negotiate "matters specified in any such negotiation agreement." The Board was expressly authorized to negotiate the Professional Agreement. I.C. § 33–1271. Idaho Code § 33–1271 broadly defines the scope of matters the Board is expressly authorized to negotiate; the Board is expressly authorized to negotiate "matters specified in any such negotiation agreement." RIF procedures in the present case were matters specified in the Professional Agreement. The negotiations and agreement to RIF procedures was within the express powers of the Board. *See Bear Lake,* 116 Idaho at 446–47, 776 P.2d at 455–56. RIF procedures in the present case were agreed upon after negotiation.

RIF procedures of the Professional Agreement are not in conflict with any statutory provisions. The School District was acting within its express authority when it negotiated RIF procedures set forth in the Professional Agreement pursuant to I.C. § 33–1271. We reverse the decision of the district court

that the School District is not legally bound to RIF procedures set forth in the Professional Agreement.

Hunting also contends that the provision in the Professional Agreement entitling Hunting to notification that her contract with the School District would not be renewed by May 15 is legally enforceable. We agree.

▄ The Professional Agreement states:

All certificated employees are considered to be annual contract teachers until they have signed a contract for a fourth, full, consecutive year of teaching with the District, which then changes their status to renewable contract certificated employees (tenured). All annual contract certificated employees shall be evaluated using the guidelines set forth in Section 8.6. Each annual contract certificated employee shall be given notice, in writing, whether he or she will be re-employed for the next ensuing year. Such notice shall be given by the Board at the earliest possible date but not later than the 15th day of May of each year an employee is considered to be an annual contract certificated employee.

(Professional Agreement, § 7.5.)

The notification date set forth in the Professional Agreement, "not later than the 15th day of May," is not in conflict with the express language of I.C. § 33–514, which requires notification "no later than the fifteenth day of June." Idaho Code § 33–514 does not expressly or impliedly preclude school districts from agreeing to provide notice earlier than June 15th.

The School District argues that the Court should focus upon whether there was any express statutory authority empowering the School District to negotiate an earlier notification date. Idaho Code § 33–1271 expressly gives the board of trustees of a school district the authority to negotiate "matters specified in any such negotiation agreement." The notification date was a matter negotiated and agreed to by the School District. The School District was acting within its express powers when it agreed to the May 15th date set forth in the Professional Agreement, which is "not later" than the June 15th date

set forth in I.C. § 33–514. We hold that the May 15th notification of re-employment provision set forth in the Professional Agreement is legally enforceable.

The district court's decision granting the School District summary judgment is reversed.

## V.

## CONCLUSION

The decision of the district court granting the School District summary judgment is reversed and this case is remanded to the district court for further proceedings consistent with this opinion. We award costs to Hunting. No attorney fees were requested by Hunting.

JOHNSON, TROUT, SILAK and SCHROEDER, JJ., concur.