# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 31194

IN THE MATTER OF THE UNIVERSE LIFE INSURANCE COMPANY, IN LIQUIDATION.

|  |  |
|---|---|
| IN THE MATTER OF THE UNIVERSE LIFE INSURANCE COMPANY, IN LIQUIDATION. | ) ) ) ) |
| GRAIN GROWERS MEMBERSHIP AND INSURANCE TRUST, AMERICAN SOYBEAN ASSOCIATION MEMBERSHIP AND INSURANCE TRUST, NATIONAL CONTRACT POULTRY GROWERS ASSOCIATION MEMBERSHIP AND INSURANCE TRUST, AMERICAN INDEPENDENT ASSOCIATIONS PARTICIPATING TRUSTS, and NATIONAL GROWERS AND STOCKMEN GROUP TRUST, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Appellants, | ) ) |
| v. | ) ) |
| LIQUIDATOR FOR THE UNIVERSE LIFE INSURANCE COMPANY, | ) ) ) |
| Respondent. | ) ) |

Boise, February 2007 Term

2007 Opinion No. 47

Filed: March 28, 2007

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, in and for Ada County.  The Hon. Thomas Neville, District Judge.

The judgment order of the district court is <u>reversed</u> in part and <u>affirmed</u> in part.

Greener Banducci Shoemaker, PA, Boise, for appellants.  Chris Burke argued.

Holland & Hart, Boise, for respondent.  Newal Squyres argued.

EISMANN, Justice.

This is an appeal from summary judgments construing insurance policy provisions regarding the amount of money that the insureds are entitled to receive upon termination of the

policies. We affirm the district court's construction of two of the policies and reverse it as to the third.

## I.  FACTS AND PROCEDURAL HISTORY

Universe Life Insurance Company (Universe Life) was a life and health insurance company headquartered in Lewiston, Idaho. Virtually all of the business of Universe Life consisted of group universal health policies issued to trusts formed by agricultural-related associations. Those trusts are the Grain Growers Membership and Insurance Trust, the American Soybean Association Membership and Insurance Trust, the Poultry Growers Membership and Insurance Trust, the American Independent Agricultural Producers Groups Trust, and the National Growers and Stockmen Group Trust. The Trusts were the policyholders, and the Insureds were members of the associations that had formed the Trusts.

On March 4, 1996, the acting director of the Idaho Department of Insurance (Director) commenced proceedings under Idaho Code § 41-3312 seeking court permission to rehabilitate Universe Life based upon the request and consent of its board of directors. Universe Life and the Director stipulated to an order of rehabilitation that was signed by the district court and entered on March 5, 1996. Pursuant to that order and Idaho Code § 41-3313, the Director was vested with title to Universe Life's assets and was obligated to administer them under court supervision.

During 1994, Universe Life decided that it was in the best interests of its policy holders and shareholders to discontinue its group universal life policies and to transfer such business to Centennial Life Insurance Company (Centennial Life), a Kansas insurer. The Director approved the transfer, which was to be accomplished in two stages. In the first stage, approximately forty-five percent of Universe Life's group universal health business was transferred to Centennial Life, along with reserves. When Universe Life attempted to complete the second stage by transferring its remaining group universal health business, Centennial Life refused to accept the policies because Universe Life could not provide adequate cash or cash equivalents as reserves for those policies.

Ultimately, the Director and Universe Life's parent company found another insurer who agreed to take over all of the Universe Life's group universal health insurance business and to issue new policies that were substantially similar to the Universe Life policies, with the

2

exception that they would not include the Supplemental or Universal Benefits. All of the Insureds under the Universe Life policies had the right to coverage under these new policies.

On August 8, 1997, the Director submitted a rehabilitation plan to resolve the impasse created by the breakdown of the transaction with Centennial Life. The plan included rescinding the agreements between Universe Life and Centennial Life and entering into an agreement with the new insurer under which it would issue replacement policies for all policies that had been or were to have been transferred to Centennial Life. The district court approved the plan on October 8, 1997. To implement the plan, the Trusts cancelled their insurance policies with Universe Life effective December 1, 1997. After a hearing on February 13, 1998, the district court ordered Centennial Life to return various assets to Universe Life and granted Universe Life judgments for various sums against Centennial Life. Nevertheless, Universe Life's financial condition continued to deteriorate, and on November 18, 1998, the Director petitioned the court for an order liquidating Universe Life due to its insolvency. On December 4, 1998, the district court entered an order granting that petition.

On April 30, 1999, the Trusts filed various proofs of claim regarding the distribution of Universe Life's assets. Claims 1-5 dealt with policies providing Supplemental Benefits. Those policies provided each Insured with an account funded by a portion of the Insured's policy premiums and by monies from Universe Life. The balance in the account was called the Supplemental Benefit Premium Accumulation. An Insured could use his or her Supplemental Benefit Premium Accumulation to pay premium increases and to pay increases in the applicable deductible for medical benefits. The Insured could also, subject to certain requirements and limitations, withdraw money from it to use as he or she wished. Under certain circumstances, Universe Life could exact a "Surrender Charge" when paying an Insured his or her Supplemental Benefit Premium Accumulation. The Director did so in this case. In Claims 1-5 the Trusts contend that the Director did not have the authority to impose the Surrender Charges.

Claims 7-10 dealt with the policies that provided Universal Benefits. The Universal Benefit provided each insured with a credit that could be applied to premium increases and/or increases in the applicable deductible. In addition, the policies also provided an account, called a Withdrawal Value, consisting of monies provided by Universe Life. Upon the termination of the policies, the Director paid each insured his or her Withdrawal Value. In addition, the Director paid insureds who had asked, prior to termination, to apply their available Universal Benefits to

3

premium increases and/or increases in their deductibles. In Claims 7-10, the Trusts contended that Insureds who had not asked to apply their available Universal Benefits prior to policy termination should be able to use those benefits retroactively to reimburse themselves for premium and/or deductible increases they had paid. The Director denied those claims.

Claim 13 dealt with Universal Benefit policies covering Insureds in Montana. These policies provided that if the insurer terminated the policy for any reason, it must "return the UB" to the Insureds. The Trusts contended that termination of the policies in connection with a court-ordered rehabilitation plan should be considered cancellation by the insurer under this policy provision. The Director denied that claim.

The Trusts timely filed objections to the denied Claims, and the Director then asked the district court to hear the matter as provided in Idaho Code § 41-3339. In July 2001, the Trusts and the Director filed motions for partial summary judgment with respect to Claims 1-5 and 7-10. The motions were heard on September 10, 2001, and on July 31, 2002, the district court issued a memorandum decision and order denying the Trusts' motion and granting the Director's motion. In October 2002, the Director filed a motion for summary judgment with respect to Claim 13. That motion was heard on October 31, 2002, and on July 30, 2003, the district court entered a memorandum decision and order granting the motion. The Trusts appealed the court's decisions. This Court remanded the matter for entry of a judgment, and on December 2, 2005, the district court entered judgment denying the claims. This appeal then proceeded.

## II. ISSUES ON APPEAL

1. Does this Court lack jurisdiction because the Trusts did not file a notice of appeal within forty-two days after the district court entered its order on July 30, 2003, granting the Director's motion for summary judgment?

2. Did the district court err in holding that the Director could deduct surrender charges from the balances owed the Insureds upon termination of the Supplemental Benefit policies?

3. Did the district court err in holding that the Insureds under the Universal Benefit Policies could not retroactively apply their Universal Benefits after the policies had been terminated?

4. Did the district court err in holding that the Trusts' termination of the Montana policies at the request of the Director did not constitute termination by Universe Life?

4

## III. ANALYSIS

**A. Does this Court Lack Jurisdiction Because the Trusts Did Not File a Notice of Appeal Within Forty-Two Days After the District Court Entered Its Order on July 30, 2003, Granting the Director's Motion for Summary Judgment?**

The Director contends that this Court lacks jurisdiction because the Trusts did not file their appeal within forty-two days of the entry of the final judgment. The Trusts filed their notice of appeal on September 29, 2004. The Director asserts that the final judgment in this action was the Memorandum Decision and Order entered by the district court on July 30, 2003, over one year before the Trusts filed their notice of appeal.

The timely filing of a notice of appeal is jurisdictional. *Twin Falls County v. Coates*, 139 Idaho 442, 80 P.3d 1043 (2003). If the Trusts did not file their notice of appeal timely, then this Court does not have jurisdiction and the appeal must be dismissed. *Hoskinson v. Hoskinson*, 139 Idaho 448, 80 P.3d 1049 (2003). Whether or not the Trusts' appeal was timely depends upon whether the Memorandum Decision and Order entered on July 30, 2003, constitutes a final judgment.

The Director received approximately 250 proofs of claim to be reviewed and processed in this case. As a result, the district court entered a "Claims Administration Procedures Order" on August 3, 2000, which included the following provision:

> On each Claim determination with respect to which timely objections have been filed by an objecting Claimant, and judicial review is pursued by the Claimant, the Court may make written findings of fact and conclusions of law, along with a disposition of the Claim (the "Award"), which disposition shall become final with respect to the Claim allowed or disallowed. Unless a motion for reconsideration is filed, the Award shall become final. If a motion for reconsideration is filed, the Court may address that motion in its discretion.

The above-quoted provision in the district court's order does not make the determination of a claim final for purposes of appeal. The finality of a judgment resolving less than all of the claims in a lawsuit is governed by Rule 54(b) of the Idaho Rules of Civil Procedure. *Merchants, Inc. v. Intermountain Indus., Inc.*, 97 Idaho 890, 556 P.2d 366 (1976). That rule requires entry of

5

a Rule 54(b) Certificate,[1] and no such Certificate was executed with respect to any of the determinations at issue in this appeal.

On May 13, 2004, the Trusts filed a motion seeking a Rule 54(b) certification with respect to the issues decided by the district court in its orders granting summary judgment entered on July 31, 2002, and July 30, 2003. The district court heard that motion on June 30, 2004, and on May 19, 2005, it entered an order denying the motion. In its order, the court stated, "[A]s of July 30, 2003, the Court had entered its Orders and ruled on all of the pending issues." When listing the issues it had ruled on, the district court only listed those issues between the Trusts and the Director. It did not state that all other claims in the lawsuit had been resolved. The resolution of all claims between some parties in a lawsuit does not constitute a final judgment unless there is a judgment certified as final as required by Rule 54(b). As that Rule states,

> In the absence of such determination [that there is no just reason for delay] and direction [for entry of the judgment], any order or other form of decision, however designated, which adjudicates less than all the claims or the rights and liabilities of less than all the parties shall not terminate the actions as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

For the Memorandum Decision and Order entered on July 30, 2003, to constitute a final judgment, it must have determined the last remaining claim in the lawsuit, not merely the last remaining claim between the Trusts and the Director. The Director does not argue and has not shown that it did so. Indeed, the district court register of actions shows the entry of orders approving claims on September 12, 2003, and July 1, 2004; the entry of a stipulation for dismissal of a claim on March 2, 2004; and the entry of an order settling a lawsuit on November 15, 2004. The Memorandum Decision and Order entered on July 30, 2003, could have been a final judgment only if it was certified as final as provided in Rule 54(b) or if it resolved the last

---

[1] Rule 54(b)(1) requires that the Rule 54(b) Certificate be in substantially the following form:

RULE 54(B) CERTIFICATE

With respect to the issues determined by the above judgment or order it is hereby CERTIFIED, in accordance with Rule 54(b), I.R.C.P., that the court has determined that there is no just reason for delay of the entry of a final judgment and that the court has and does hereby direct that the above judgment or order shall be a final judgment upon which execution may issue and an appeal may be taken as provided by the Idaho Appellate Rules.

remaining issue in the case. It was not so certified and it did not resolve the last remaining issue in the lawsuit. It also was not a final judgment because neither it nor the earlier memorandum decision and order constituted a judgment. They were simply orders granting summary judgment.

The district court's Memorandum Decision and Order entered on July 30, 2003, was not a judgment. It merely granted the Director's motion for summary judgment with respect to Claim 13. After explaining why it thought the Director was entitled to prevail on his motion for summary judgment, the district court concluded by stating:

> For the reasons stated above, Universe Liquidator's Motion For Summary Judgment is hereby GRANTED because this Court concludes there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. This Order is intended to have the effect of affirming the Liquidator's [Director's] decision denying Claim 13. Counsel for the Liquidator shall provide any proposed judgment considered necessary to implement this decision, subject to the right of counsel for the Trusts to review for form.
> AND IT IS SO ORDERED.

The earlier "Memorandum Decision and Order on Motions for Partial Summary Judgment" entered on July 31, 2002, was likewise not a judgment. It merely granted the Director's motion for partial summary judgment with respect to Claims 1-5 and 7-10 and denied the Trusts' motion for summary judgment with respect to the same claims. It concluded:

> For the reasons stated above, the Trusts' Motion for Partial Summary Judgment is hereby DENIED, and Universe Liquidator's [Director's] Motion for Partial Summary Judgment on Trusts' Claims 1-5 And Claims 7-10 is GRANTED. The Trusts, on behalf of the certificate holders, do not have Class 2 priority policyholder claims in Claims 1-5 or Claims 7-10 under Idaho Code § 41-3342(2) because the Trusts' cancellation of the GUH policies terminated the policyholders rights to any supplemental or unvested benefits as a matter of law. Counsel for the Liquidator [Director] shall provide any proposed judgments considered necessary to implement this decision, subject to the right of counsel for the Trusts to review for form. AND IT IS SO ORDERED.

An order granting summary judgment does not constitute a judgment. *Camp v. East Fork Ditch Co., Ltd.*, 137 Idaho 850, 55 P.3d 304 (2002); *Hunting v. Clark County School Dist. No. 161*, 129 Idaho 634, 931 P.2d 628 (1997). "Every judgment shall be set forth on a separate document." I.R.C.P. 58(a); *accord*, *Hunting v. Clark County School Dist. No. 161*, 129 Idaho 634, 931 P.2d 628 (1997). Both orders granting summary judgment stated that counsel for the

Director could submit an appropriate judgment, but that was apparently not done. On July 6, 2004, the Trusts filed a motion asking the district court to enter a judgment complying with Rule 58(a) as to Claims 1-5, 7-10, and 13. The district court heard that motion on July 22, 2004, and on August 19, 2004, it entered an order denying the motion.

On August 10, 2005, the Director filed a motion in this Court seeking to dismiss the appeal on the ground that the Memorandum Decision and Order entered on July 30, 2003, was a final judgment and the notice of appeal had not been timely filed. By order issued on September 16, 2005, we denied the order, suspended the appeal, and remanded the case to the district court for entry of a final judgment. On December 2, 2005, the district court entered a judgment on the claims that are at issue in this appeal, but it did not certify that judgment as final pursuant to Rule 54(b). Thus, that judgment would be final only if all other claims in the case have been resolved. It appears from the district court register of actions that all claims in this case have been resolved, and the district court file is now closed.

In summary, the district court did not enter a judgment as to the claims at issue on this appeal until December 2, 2005. The Trusts' notice of appeal filed on September 29, 2004, was therefore premature, not late. It appears that judgments have been entered resolving all claims in this case. Therefore, this Court has jurisdiction to hear this appeal.

The substantive issues on this appeal were decided by the district court on motions for summary judgment. In an appeal from an order of summary judgment, this Court's standard of review is the same as the standard used by the trial court in ruling on a motion for summary judgment. *Infanger v. City of Salmon*, 137 Idaho 45, 44 P.3d 1100 (2002). All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party. *Id.* Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Id.* If the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review. *Id.*

8

**B. Did the District Court Err in Holding that the Director Could Deduct Surrender Charges from the Balances Owed the Insureds upon Termination of the Supplemental Benefit Policies?**

Some of the policies at issue provided a Supplemental Benefit, which was an account that the Insured could use to pay future increases in policy premiums and/or to satisfy deductible amounts in excess of $250.00. In addition, the Insured could make partial withdrawals of money from the account. The accounts were funded by a portion of the Insured's premium payments and by Universe Life making annual interest payments and annual allocations of a portion of the Surrender Charges it had collected during the prior year. The Surrender Charges were charges that Universe Life was entitled to exact under specified circumstances before paying an Insured his or her Supplemental Benefit Premium Accumulation, which is the balance in his or her account. To implement the rehabilitation plan, the Trusts terminated these policies. The issue is whether the policies permitted Universe Life, and therefore the Director, to exact a surrender charge upon such termination.

The applicable policy provisions regarding the surrender charge were as follows:

SUPPLEMENTAL BENEFIT PREMIUM ACCUMULATION means the sum total of Supplemental Benefit Premium credited with interest and Surrender Charge Allocations, as reduced by the Use of the Supplemental Benefit and Surrender Charges.

. . . .

PARTIAL WITHDRAWALS
Insured may withdraw as a partial surrender a minimum of $250. Insured's partial surrender withdrawals are limited to the amount Insured's Supplemental Benefit Premium Accumulation exceeds (1) the applicable surrender charge, and (2) a minimum Supplemental Benefit Premium Accumulation balance of at least $250 if Insured elected single coverage, or $500 if Insured elected married or family coverage.

. . . .

SURRENDER CHARGE
When Supplemental Benefit Premium payments terminate, the Supplemental Benefit Premium Accumulation will be available to Insured subject to a Surrender Charge. This Charge will be the smaller of . . . .

The Surrender Charge will not be applied in the event of:
1. Insured's death;
2. Insured's retirement from farming or ranching after, and, having made Supplemental Benefit Premium payments for at least 10 years;

9

3. Attainment of age 70;
4. Insured's Total Disability;
5. The termination of the Group Insurance Trust;
6. The termination of the Supplemental Benefit;
7. An application of Supplemental Benefit Premium Accumulations for:
   a. Payment of future increases in Policy Premiums;
   b. Payment of Deductible charges; or
8. Suspension of Supplemental Benefit Premium payments because the Maximum Amount of Supplemental Benefit Premium Accumulation has been reached.
. . . .

POLICY TERMINATION
If the Policy terminates and a replacement policy is available, then We, at Our option may;
1. transfer the Supplemental Benefit Premium Accumulation to the replacement policy; or
2. return the Supplemental Benefit Premium Accumulation to Insured; or
3. make available an individual product. The Supplemental Benefit Premium Accumulation will be transferred to such product.

The issue is whether any of the above-quoted policy provisions permit Universe Life to deduct a surrender charge under the circumstances involved in this case. "In construing an insurance policy, the Court must look to the plain meaning of the words to determine if there are any ambiguities. This determination is a question of law. In resolving this question of law, the Court must construe the policy 'as a whole, not by an isolated phrase.'" *Cascade Auto Glass, Inc. v. Idaho Farm Bureau Ins. Co.*, 141 Idaho 660, 663, 115 P.3d 751, 754 (2005) (citations omitted).

The Director argues that the policy provision beginning "SUPPLEMENTAL BENEFIT PREMIUM ACCUMULATION" imposes a surrender charge in these circumstances. The applicable wording states, "SUPPLEMENTAL BENEFIT PREMIUM ACCUMULATION means the sum total of Supplemental Benefit Premium credited with interest and Surrender Charge Allocations, as reduced by the Use of the Supplemental Benefit and Surrender Charges." That provision does not impose a surrender charge any more than it requires Universe Life to credit an Insured's account with interest and surrender charge allocations or requires the Insured to use his or her Supplemental Benefit. Other provisions in the policy require Universe Life to credit the accounts with interest payments and surrender charge allocations and specify how those sums will be determined. Likewise, other provisions of the policy specify how an Insured

can use the Supplemental Benefit and when surrender charges apply and do not apply. This provision of the policy merely defines the term "SUPPLEMENTAL BENEFIT PREMIUM ACCUMULATION." The Supplemental Benefit Premium Accumulation is simply the balance in an Insured's Supplemental Benefit account. It is the total of the Supplemental Benefit Premiums and Surrender Charge Allocations less any Surrender Charges imposed and any withdrawals from using the Supplemental Benefit.

The Director also relies upon the first sentence in the policy provision entitled "SURRENDER CHARGE." That sentence states, "When Supplemental Benefit Premium payments terminate, the Supplemental Benefit Premium Accumulation will be available to Insured subject to a Surrender Charge." Once the policies were terminated, the Insureds naturally stopped paying the policy premiums. Each Insured's policy premium included a percentage that was applied as the supplemental benefit premium. During the first year it was 15% of the total policy premium, and it could increase thereafter. Thus, when the Insureds stopped paying their premiums upon the termination of the policies, they also stopped paying the supplemental benefit premiums. According to the Director, for the Insureds to avoid the surrender charges, they would have had to continue paying the supplemental benefit premiums after the policies had been terminated.

The provision entitled "SURRENDER CHARGE" also provides, "The Surrender Charge will not be applied in the event of: . . . The termination of the Supplemental Benefit." The termination of the policies terminated the supplemental benefits. Therefore, under this provision no surrender charge is applicable. The Director argues that "termination of the Supplemental Benefit" should be read to mean termination of only the supplemental benefit while leaving the other provisions of the policies in force. That is not what it states. On its face, it applies to "[t]he termination of the Supplemental Benefit," and that benefit terminated when the Trusts terminated these policies. Universe Life was no longer offering policies with a Supplemental Benefit.

The Director's proposed interpretation is inconsistent with his construction of the provision he claims authorizes the surrender charge. That provision authorizes the imposition of a surrender charge upon the termination of "Supplemental Benefit Premium payments." It refers only to the termination of the supplemental benefit premium payments, not the termination of the policy premium payments. The Director contends it is applicable because the supplemental

11

benefit premiums were included in the policy premiums, so when the Insureds stopped paying the policy premiums they also stopped paying the supplemental benefit premiums. The supplemental benefit was also one of several benefits provided by the policy. The termination of the policy terminated that benefit. If termination of the policy premium payments constitutes termination of the included supplemental benefit premium payments, then termination of the policy includes termination of the included Supplemental Benefit.

The Director also argues that the Trusts made a judicial admission that they are not entitled to recover the surrender charges. On December 4, 1998, counsel for the Grain Growers Membership and Insurance Trust filed a motion seeking to modify the proposed order of liquidation. He proposed that the order include a provision stating that his client would assert claims for the payment of "unvested benefits pursuant to GUH policies" as Class Three and Class Four Claims and that "these benefits are designated 'supplemental benefit accumulations.'" The district court did not grant the motion. In his affidavit in support of the motion, counsel stated that his client had "canceled the GUH policies . . . and the certificateholders [Insureds] were paid all SBA/UB benefits that had vested and that were contractually due upon cancellation by the policyholder." The Director contends that this statement constituted a judicial admission.

"A judicial admission is a statement made by a party or attorney, in the course of judicial proceedings, for the purpose, or with the effect, of dispensing with the need for proof by the opposing party of some fact." *Sun Valley Potato Growers, Inc. v. Texas Refinery Corp.*, 139 Idaho 761, 765, 86 P.3d 475, 479 (2004). "A judicial admission is a deliberate, clear, unequivocal statement of a party about a concrete fact within the party's peculiar knowledge, not a matter of law. . . . [and] not opinion." 29A Am. Jur. 2d, Evidence § 770 (1994).

In prior opinions, we have held that judicial admissions include admitting an allegation in an opposing party's pleading, *Griff, Inc. v. Curry Bean Co., Inc.*, 138 Idaho 315, 341, 63 P.3d 441, 447 (2003); a stipulation entered into by parties or their counsel, *Reding v. Reding*, 141 Idaho 369, 109 P.3d 1111 (2005); and counsel's admission at trial of a factual issue upon which the opposing party had the burden of proof, *McLean v. City of Spirit Lake*, 91 Idaho 779, 782-83, 430 P.2d 670, 673-74 (1967). Conversely, we have held that judicial admissions do not include a party's allegation in a complaint filed in a separate but related lawsuit, *Curtis v. Canyon Highway District No. 4*, 122 Idaho 73, 84, 831 P.2d 541, 552 (1992), *overruled on other grounds by Lawton v. City of Pocatello*, 126 Idaho 454, 462, 886 P.2d 330, 338 (1994); or a party's

allegation in a pleading that was later amended or withdrawn, *Swanson v. State*, 83 Idaho 126, 135, 358 P.2d 387, 392 (1960).

The statement made by counsel for the Grain Growers Membership and Insurance Trust does not constitute a judicial admission. It was not made for the purpose, or with the effect, of dispensing with the need for proof by the opposing party of some fact. Insofar as is relevant here, it was not a statement of fact; it was a statement of law or opinion regarding the interpretation of the SBA Policies. Counsel later admitted in a brief lodged September 5, 2001, that his legal opinion as to the interpretation of the Policies was incorrect.

The Director also argues that the Trusts are estopped to challenge the imposition of the surrender charge because they approved the Rehabilitation Plan and accepted its benefits. Nowhere does the Plan provide that surrender charges would be deducted when paying the Insureds the balances of their Supplemental Benefit Premium Accumulations. The stated objectives of the Plan included: "Pay certificate holders [Insureds] the SBA/UB cash benefits contractually due on cancellation of the GUH policies by the Trusts or the insurer. This amount is greater than the amount due a certificate holder who individually cancels coverage." Regarding payment of sums due, the Plan stated, "To the extent of assets in excess of such claims reserve, the Rehabilitator [Director] shall pay the amount of the respective SBA/UB cash withdrawal benefit to each GUH Plan certificate holders [sic] as of the date of termination of the applicable GUH policy." There was no mention of exacting any surrender charge.

In summary, the policies provided, "The Surrender Charge will not be applied in the event of: . . . The termination of the Supplemental Benefit." Upon the termination of the policies, the supplemental benefit terminated. The policies did not permit Universe Life to retain a surrender charge when paying the Insureds the balances of their Supplemental Benefit Premium Accumulations. We therefore reverse the district court on this issue.


**C. Did the District Court Err in Holding that the Insureds under the Universal Benefit Policies Could Not Retroactively Apply their Universal Benefits after the Policies Had Been Terminated?**

Some of the policies provided a Universal Benefit in the form of a credit that an Insured could apply to pay premium increases ("Levelized Premium Benefit") and/or obtain reimbursement of increases in his or her deductible ("Supplemental Deductible Benefit"). In

addition, each Insured could have an associated "Withdrawal Value," which is a sum comprised of interest and experience returns[2] paid by Universe Life.  The Withdrawal Value could be used to pay a Levelized Premium Benefit or a Supplemental Deductible Benefit that was in excess of the available Universal Benefit credit.  The insured could also make partial withdrawals of cash from his or her Withdrawal Value.

The Insureds were paid the amounts of their respective Withdrawal Values as of December 1, 1997, the date these policies were terminated.  If, prior to that termination date, an Insured had requested that his or her Universal Benefit be applied to increases in the Insured's premium and/or deductible, that sum was also paid.  The issue is whether the Insureds who had not made that request prior to the termination of the policies are entitled to have their Universal Benefits applied retroactively to give them refunds of premium increases and/or deductible increases that they had already paid.

The policies provided that upon their termination the Insureds were entitled to receive the amounts of their respective Withdrawal Values.  The applicable policy provision stated:

> **When Coverage Ends –** If an Insured's coverage ends for any reason, he or she will be entitled to receive payment of his or her remaining Withdrawal Value.  If the termination is due to death of an Insured or his or her withdrawal value is not transferred to a continuing spouse or dependents, it will be paid to that Insured's beneficiary.  Upon an Insured's death, his or her unused Universal Benefits accrued, including Withdrawal Values, may be transferred to the surviving spouse or dependents if they elect to continue their coverage under this plan.

Any additional unused Universal Benefit credit was available only if the Insured died and the insured's surviving spouse or dependents elected to continue the insurance coverage.  That did not happen in this case.  Thus, the Insureds under these policies were paid what the policies provided.

The Trusts contend that the Director arbitrarily picked December 1, 1997, as the deadline for Insureds to have submitted claims to apply their Universal Benefits.  That date is the date the Trusts terminated the policies.  Upon termination of the policies, the above-quoted provision

---

[2] "Experience return" was defined as "the insurance company's earned premiums for the group in excess of those required to produce the company's targeted incurred losses, insurance expenses and commissions and administrative allowances, and stipulated profits."

14

specified the sum that the Insureds were entitled to receive. The Director's selection of that date with respect to payment of such benefits was not arbitrary.

In summary, the Universal Benefit policies specified the amounts that the Insureds were entitled to receive when "an Insured's coverage ends for any reason," which it did when the policies were canceled. They were paid that sum. We affirm the district court on this issue.

**D.   Did the District Court Err in Holding that the Trusts' Termination of the Montana Policies at the Request of the Director Did Not Constitute Termination by Universe Life?**

The Montana Universal Benefit policies included a provision stating, "[I]f the insurer terminates the master policy for any reason, the insurer will either (1) transfer the UB to a replacement policy; (2) return the UB to the certificate holder; or (3) make available a similar product and transfer the amount of the UB account to the new product." If the insurer, Universe Life, did not cancel the policies, then the Insureds would be paid only a portion of these benefits. The Trusts argue that their cancellation of the policies at the request of the Director should constitute cancellation by Universe Life. In support of this argument, the Trusts assert that the Director in his capacity as rehabilitator of the insurance company "steps into the company's shoes." Assuming that this metaphor is accurate, it was the Trusts who canceled the policies, not the Director. The Director asked, but did not require, that they do so, nor did the district court require that they do so.

The Trusts assert that their cancellation of the policies is not binding upon them because the cancellation was obtained by fraud or mistake. In their brief, the Trusts do not explain the nature of the alleged fraud or mistake. They simply state that they raised the issue below and cite to portions of the record on appeal. There is no allegation in their brief that they cancelled the Montana policies because of any mistaken belief or fraudulent representation that their cancellation would be considered cancellation by Universe Life or the Director. The Trusts' passing reference to this issue shows that they did not believe it meritorious enough to support with argument and authority. Therefore, we will not address it. *Inama v. Boise County ex rel. Bd. of Comm'rs*, 138 Idaho 324, 330, 63 P.3d 450, 456 (2003) ("We will not consider issues cited on appeal that are not supported by argument and propositions of law").

Our resolution of the issues as to the plain meaning of the applicable policy provisions renders moot the remaining issues raised by the Trusts on appeal. We will therefore not address them.


## IV. CONCLUSION

We reverse the district court regarding the Director's authority to retain a Surrender Charge from the sum paid to the Insured's under the Supplemental Benefit policies and we affirm the district court regarding the Universal Benefit Policies and the Montana policies. Because both sides prevailed in part, we do not award costs on appeal.


Chief Justice SCHROEDER, and Justices TROUT, BURDICK and JONES **CONCUR**.