IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 35079

T.J.T., INC., a Washington corporation,    )

    Plaintiff-Appellant,               )

v.

ULYSSES MORI, an individual

    Defendant-Respondent.

Boise January 2010 Term

2010 Opinion No. 36

Filed: March 26, 2010

Steven W. Kenyon, Clerk

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Ronald J. Wilper, District Judge.

District court order granting summary judgment, remanded for entry of final judgment and further proceedings.

Moffett, Thomas, Barrett, Rock & Fields, Chtd., Boise, for appellant. Tyler James Anderson argued.

Hawley, Troxell, Ennis & Hawley, LLP, Boise, for respondent. D. John Ashby argued.

_____

BURDICK, Justice

Appellant T.J.T., Inc. (TJT) appeals from the district court's grant of summary judgment to Respondent Ulysses Mori (Mori) in connection with a non-compete agreement entered into between the parties. TJT argues that the district court erred in finding that the Non-Competition Agreement was void and therefore unenforceable under California law. TJT also appeals from the district court's award of attorney fees and costs to Mori in the amount of $107,236.85, and the court's denial of TJT's Motion for Reconsideration.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from the execution of a non-compete agreement between TJT and Mori in connection with the purchase and sale of Mori's business, Leg-It Tire Company, Inc. (Leg-It), to TJT in 1997. Leg-It was owned and operated by Mori in Woodland, California, and the company's primary business was recycling tires and axles and then selling the recycled tires and

axles to manufactured homes factories in Northern California, along with a factory in Colorado. Leg-It also sold "raw," or unrecycled, tires and axles to other recyclers and factories, and Mori testified that Leg-It operated in some capacity in the eleven Western states.

TJT also operates in the tire and axle recycling business, and it had recycling facilities in Idaho, Oregon, and Washington at the time it purchased Leg-It in 1997. TJT now also operates a facility in Colorado. Mori sold Leg-It to TJT for $1 million in cash and stock. As part of the sale of Leg-It, Mori and TJT entered into three agreements on June 24, 1997: (1) Agreement and Plan of Merger; (2) Non-Competition Agreement; and (3) Employment Agreement. The Non-Competition Agreement prohibited Mori from competing in the recycled tire and axle industry for two years following the termination of his employment with TJT.

At the time of the sale of Leg-It, Mori was hired as the "Senior Vice President and General Manager of the Leg-it Tire Company Division of [TJT]." In 2000, Mori moved to Idaho and took a new position as Corporate Sales Manager. On February 7, 2007, Mori resigned as an employee of TJT and, on February 20, 2007, Mori was hired by West States Recycling, Inc., a competitor to TJT, as a tire and axle salesman. In his employment with West States, Mori facilitated the opening of a warehouse facility in Idaho to support local Idaho customers who purchase tires and axles, and also solicited tire and axle business in Oregon, Washington, California, and Idaho.

TJT filed its Complaint on June 1, 2007, seeking injunctive relief and imposition of a constructive trust, and raising claims including breach of fiduciary duty, breach of contract on three separate grounds, breach of the implied covenant of good faith and fair dealing, and tortious interference on two separate grounds. Following a hearing on October 22, 2007, the district court issued an order denying TJT's motion for a preliminary injunction. On January 31, 2008, the district court denied TJT's request for partial summary judgment and granted Mori's motion for summary judgment in its entirety, holding that the Non-Competition Agreement was void as a matter of California law. TJT appealed to this Court from that Decision and Order on March 13, 2008. On June 2, 2008, the court entered its Order and Judgment, awarding Mori his requested attorney fees and costs in the amount of $107,236.85. TJT filed an amended notice of appeal with this Court on June 23, 2008. Prior to that date, on June 16, 2008, TJT filed a Motion for Reconsideration, which was denied by the district court on November 21, 2008. TJT then filed its Second Amended Notice of Appeal with this Court on December 31, 2008.

2

TJT appeals from the district court's grant of summary judgment to Mori, the court's denial of TJT's Motion for Partial Summary Judgment, and the court's award of attorney fees to Mori. TJT argues that the district court erred in concluding that the Non-Competition Agreement was void and therefore unenforceable under California law; in concluding that California law permits Mori to recover attorney fees; and in granting Mori attorney fees without considering, addressing, or analyzing all factors presented under I.R.C.P. 54(e)(3). An issue also exists as to whether the appeal is properly before this Court.

## II. ANALYSIS

### A. Standard of Review

"The question of subject matter jurisdiction may be raised by the Court at any time *sua sponte*." *In re Quesnell Dairy,* 143 Idaho 691, 693, 152 P.3d 562, 564 (2007). "The timely filing of a notice of appeal is jurisdictional." *In re Universe Life Ins. Co.*, 144 Idaho 751, 755, 171 P.3d 242, 246 (2007). Jurisdictional issues are questions of law over which this Court exercises free review. *Christian v. Mason*, 148 Idaho 149, __, 219 P.3d 473, 475 (2009).

### B. Jurisdiction

On January 31, 2008, the district court denied TJT's request for partial summary judgment and granted Mori's motion for summary judgment in its entirety, holding that the Non-Competition Agreement was void as a matter of California law. The order concluded: "The Court hereby GRANTS Mori's motion for summary judgment and DENIES TJT's motion for partial summary judgment. IT IS SO ORDERED."

TJT appealed to this Court from that order on March 13, 2008. On June 2, 2008, the court entered its Judgment, awarding Mori his requested attorney fees and costs in the amount of $107,236.85. The Judgment referred to the January 31, 2008, order granting summary judgment and stated that Mori was the prevailing party. TJT filed an amended notice of appeal with this Court on June 23, 2008. Prior to that date, on June 16, 2008, TJT filed a motion for reconsideration with the district court, which was denied by the court on November 21, 2008. TJT then filed its Second Amended Notice of Appeal with this Court on December 31, 2008.

In *Camp v. East Fork Ditch Co.*, this Court defined a final judgment as "an order or judgment that ends the lawsuit, adjudicates the subject matter of the controversy, and represents a final determination of the rights of the parties. It must be a separate document that on its face states the relief granted or denied." 137 Idaho 850, 867, 55 P.3d 304, 321 (2002) (internal

3

citations omitted). We further stated in *In re Universe Life Insurance Co.*, that "[a]n order granting summary judgment does not constitute a judgment." 144 Idaho at 756, 171 P.3d at 247. In addition, Idaho Rule of Civil Procedure 58(a) requires: "Every judgment shall be set forth on a separate document."

Idaho Rule of Civil Procedure 56(c) provides that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In other words, "[t]he judgment sought is a final determination of a claim or claims for relief in the lawsuit." *Spokane Structures, Inc. v. Equitable Inv., LLC*, No. 35349-2008, 2010 WL 309004, at *3 (Idaho Jan. 28, 2010). In *Spokane Structures*, this Court explained:

> The relief to which a party is entitled is not the granting of a motion for summary judgment. The Rule refers to the relief to which the party is ultimately entitled in the lawsuit, or with respect to a claim in the lawsuit. The granting of a motion for summary judgment is simply a procedural step towards the party obtaining that relief.

*Id.* Because the granting of a motion for summary judgment is simply a procedural step, "merely typing 'It is so ordered' at the end of a memorandum decision does not constitute a judgment." *Id.* at *4. Instead, "[t]he judgment must be a separate document that does not contain the trial court's legal reasoning or analysis." *Id.*

In this case the district court signed an order granting summary judgment and then entered a judgment awarding costs and attorney fees, but no final judgment was entered that stated the relief granted or denied and represented a final determination of the rights of the parties. Therefore, we remand to the district court for a final judgment.

On remand, the district court needs to consider TJT's argument that the Non-Competition Agreement can be "blue penciled" in order to bring it into compliance with California law.[1] The district court failed to address this issue. In conjunction with considering TJT's blue pencil argument, the district court may also wish to consider paragraph 11 of the Non-Competition Agreement, which provides for reformation of the agreement in the event a court finds the

---

[1] TJT argues that California appellate courts have long applied the blue pencil rule, citing *Strategix, Ltd. v. Infocrossing West, Inc.* 142 Cal. App. 4th 1068, 1074 (2006) ("Courts have 'blue penciled' noncompetition covenants with overbroad or omitted geographic and time restrictions to include reasonable limitations.")

limitations as to time, geographical area, or scope of activity to be greater than necessary to protect the goodwill sold.

## III. CONCLUSION

We find that this Court does not have jurisdiction to hear the appeal as no final and appealable judgment was entered below. We remand for further proceedings.

Chief Justice EISMANN and Justices J. JONES, W. JONES and HORTON, **CONCUR.**